Thomas E. JOHNSON, and Peggy R. Johnson, H/W
Plaintiffs-Respondents,

v.

Michael SEIPEL, d/b/a Michael Seipel's Barefoot
International Training Centers, Ltd., and Jefferson
Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 88-1830. Argued July 11, 1989.—Decided October 11, 1989.*

(Also reported in 449 N.W.2d 66.)

639

On behalf of the defendants-appellants, there were briefs by *Gregory J. Cook* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee and oral argument by *Gregory J. Cook.*

On behalf of the plaintiffs-respondents, there was a brief by *William A. Jennaro* and *Rodney D. DeKruif* of *Cook & Franke, S.C.* of Milwaukee and oral argument by *William A. Jennaro.*

Before Brown, P.J., Scott and Nettesheim, JJ.

NETTESHEIM, J. Michael Seipel, doing business as Michael Seipel's Barefoot International Training Centers, Ltd. (Seipel), appeals from a judgment awarding Thomas and Peggy Johnson $22,500 for damage to the Johnsons' shoreline property caused by the operation of Seipel's water-skiing school. Seipel argues that since the evidence demonstrates that he safely operated his boats in a manner appropriate for water-skiing and in conformity with state and local boating laws, he owes no further duty to riparian owners to refrain from damaging their property. While the law recognizes a person's right to the use and enjoyment of navigable waters as "paramount," we conclude that such persons also owe riparian owners a duty of reasonable care when exercising that right. Seipel also claims error in the jury instructions, closing argument, damage calculations and exclusion of the testimony of a newly discovered defense

witness. We reject these additional arguments and affirm the judgment.

The Johnsons own approximately 800 feet of shoreline along the Milwaukee River in Mequon. Seipel operated a barefoot water-skiing school on the river in front of the Johnsons' property during the months of June, July and August for four consecutive years (1982–85). In 1985, the Johnsons filed suit against Seipel, alleging that Seipel's negligent operation of water-ski boats had caused erosion and other damage to their property. Certain testimony at the jury trial established that Seipel's actions caused the Johnsons' shoreline to erode approximately nine feet and that this damage was foreseeable to Seipel. The jury found Seipel negligent and awarded the Johnsons $22,500 in damages. Seipel appeals.

## DUTY

The first issue is whether the trial court erred when it denied Seipel's motion for directed verdict. Seipel claims that the Johnsons failed to establish that he owed them a duty under negligence law to refrain from damaging their land. He argues that absent a violation of an applicable ordinance or statute, or violation of a boater safety rule, there is no further duty owed by a boater on a navigable stream to riparian land owners.

Before we address the question of whether Seipel owed the Johnsons a duty under the law of negligence, we briefly summarize the evidence which supports the jury's verdict finding that Seipel was negligent. Seipel operated two to three boats in front of the Johnsons' property five days a week, approximately thirteen to fourteen hours per day, for three consecutive months every summer for four years. Tom Johnson testified that Seipel's boats accounted for approximately 85% of the

traffic on the river in front of his property; waves ranging from one to three feet in height struck his shore when Seipel stopped, started and maneuvered his boats in the vicinity; and in nineteen seconds he counted seventeen waves striking the shoreline after just one pass of a Seipel boat. Neighbors testified that the river at the edge of the Johnsons' property became a "boiling cauldron" during periods of ski instruction and that Seipel's activities constituted the majority of the boating activity on the river. There was also evidence that the erosion of the Johnsons' shoreline was caused principally by Seipel's boating activities, and not by natural elements.

Other undisputed evidence showed that Seipel operated his boats in a manner which is necessary and acceptable for water-skiing. Further, it showed that Seipel neither violated any state or local laws, nor operated the crafts in an unsafe manner. Therefore, Seipel contends, there can be no finding of negligence against him.

Negligence requires a duty of care on the part of the defendant, a breach of that duty, and an injury caused by the breach. *See Sanem v. Home Ins. Co.,* 119 Wis. 2d 530, 536, 350 N.W.2d 89, 91 (1984). The issue is whether Seipel owed a duty to the Johnsons and what the scope of that duty was. These are questions of law which we review independently of the trial court's conclusions. *In re McCoy,* 142 Wis. 2d 750, 754, 419 N.W.2d 301, 304 (Ct. App. 1987).

In order for a cause of action for negligence to be maintained, there must be a "duty of care on the part of the defendant, a breach of that duty, and a causal connection between the conduct and the injury." *LaChance v. Thermogas Co.,* 120 Wis. 2d 569, 574, 357 N.W.2d 1, 3

(Ct. App. 1984). "Duty is the exercise of reasonable care whenever it is foreseeable that one's conduct may cause harm to another." *Id.* In determining whether a duty to use care exists, the court must determine that a probability of harm exists. *Anderson v. Green Bay & W.R.R.,* 99 Wis. 2d 514, 517, 299 N.W.2d 615, 617 (Ct. App. 1980). In addition, the foreseeable harm must create an unreasonable risk of danger. *Wilson v. Continental Ins. Cos.,* 87 Wis. 2d 310, 318, 274 N.W.2d 679, 683 (1979).

Seipel argues that he does not owe a duty to a riparian owner to prevent the occurrence of wakes which are the natural and probable consequences of skiing on the river. However, the essence of the duty to exercise reasonable care is not to refrain from doing a particular act. *Walker v. Bignell,* 100 Wis. 2d 256, 263, 301 N.W.2d 447, 452 (1981). Rather, it is the duty to act in a certain way—to exercise reasonable care—whenever it is foreseeable that one's conduct may cause harm to another. *Id.* Thus, Seipel's conduct must be examined in terms of whether it satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances. *Id.* at 264, 301 N.W.2d at 452.

It is well established that the public has the right to unobstructed use of navigable waters for both recreational and commercial purposes. *Capt. Soma Boat Line, Inc. v. City of Wisconsin Dells,* 56 Wis. 2d 838, 846, 203 N.W.2d 369, 373 (1973). Furthermore, any water capable of floating the shallowest recreational boat is "navigable." *DeGayner & Co. v. DNR,* 70 Wis. 2d 936, 945, 236 N.W.2d 217, 221 (1975). Thus, Seipel had the right to

operate his ski school upon the river in front of the Johnsons' property.

However, Wisconsin case law also establishes that a user of a waterway owes a duty of reasonable care and use to riparian owners:

> The right of passage on a navigable stream is a common and paramount one, but must of course be exercised with due regard to the rights of riparian owners. The use of the stream must be reasonable, and it must be exercised with ordinary care and skill . . ..

*Field v. Apple River Log Driving Co.,* 67 Wis. 569, 575, 31 N.W. 17, 19 (1887). Thus, Seipel was bound to exercise his right with due regard to the rights of riparian owners such as the Johnsons. *See id.*

*Field* and *McCauley v. Salmon,* 14 N.W.2d 715 (Iowa 1944), cited by Seipel, do not afford users of navigable waters the unfettered right to use the water without incurring liability to riparian owners. Our supreme court in *Field* held that a log-driving company would not be liable for any damage to the plaintiff's land caused by log jams which were reasonably necessary and proper to facilitate driving of logs. *Field,* 67 Wis. at 575, 31 N.W. at 20. This holding was based on the logging company's state charter, ch. 430, P. & L. Laws of 1868, which expressly authorized it to take actions necessary to facilitate the driving of logs. *Id.* at 572, 575, 31 N.W. at 18, 20. We know of no similar legislation, however, authorizing water-skiers or water-skiing schools to take whatever action is necessary to accomplish their purpose. Therefore, we conclude that there is no basis upon which to immunize water-skiing schools from liability for damage to property of riparian owners which

occurred as a natural consequence of operating a water-ski school.

*McCauley* is similarly inapplicable to our analysis. There, the plaintiff brought an action for injunctive relief, claiming that the defendant's boats were operated at unreasonable speed and noise levels. *McCauley,* 14 N.W.2d at 715. However, in *McCauley,* the erosion to the plaintiff's land was not caused principally by the defendant. In addition, the Iowa Supreme Court referred to evidence that the operation of the boats was not unreasonable such that it constituted a wrongful invasion of the rights of the riparian landowners. *Id.* at 716. Here, the jury has determined that Seipel's activities were unreasonable under the law of negligence and that such activity caused the damage to the Johnsons' shoreline property.

As to Seipel's claim that he did not violate any state or local laws, we observe that compliance with a legislative enactment or administrative regulation does not *per se* relieve the actor of the duty arising under common-law negligence to exercise ordinary care. *Kemp v. Wisconsin Elec. Power Co.,* 44 Wis. 2d 571, 579, 172 N.W.2d 161, 164 (1969). We therefore reject Seipel's argument that the question of his negligence is controlled by the evidence of his compliance with applicable laws and regulations.

Seipel had the undisputed right to the reasonable use of the Milwaukee River for his water-skiing activities. However, there is evidence that Seipel's extensive use of the portion of the river in front of the Johnsons' property for his boating activities was unreasonable in light of the foreseeable damage the heavy usage would cause to the Johnsons' property. Having concluded the

646

law of negligence imposes a duty on Seipel to act with due regard to the rights of riparian owners, the trial court properly submitted the question of Seipel's negligence to the jury.

## JURY INSTRUCTIONS

Seipel claims that the negligence instruction given to the jury misstated the law and confused the jury. At trial, Seipel objected to the following portion of the negligence jury instruction:

> If you find that the defendants failed to exercise ordinary care in their use of the river adjacent to the land of the plaintiffs, then you should find the defendants negligent. In addition, the defendants have a duty to comply with the provisions of the Wisconsin Statutes which provide, in part:
> "No person may operate or use any boat, or manipulate any water skis . . . upon the waters of this state in a careless, negligent, or reckless manner so as to endanger the life, property, or person of another."
> If you find the defendants were negligent, careless, or reckless in operating their motor boats in a manner so as to endanger the property of the plaintiffs and such conduct was a cause of the damage to the plaintiffs' property, then you should find the defendants negligent.

The statutory language quoted in this instruction is found in sec. 30.68(2), Stats. At trial, Seipel argued that legislative history indicated that sec. 30.68(2) was intended to be applied only to a boater's liability vis-a-vis another boater.[1] The trial court, however, ruled that

---

[1] On appeal, Seipel asserts that inclusion in the jury instruction of sec. 30.68(2) *and* (4), Stats., was error. However, the

the statute was clear and unambiguous on its face and provides for liability to all property owners endangered by the boater's negligent conduct.

Section 30.68(2), Stats., reads as follows:

> (2) NEGLIGENT OPERATION. No person may operate or use any boat, or manipulate any water skis, aquaplane or similar device upon the waters of this state in a careless, negligent or reckless manner so as to endanger his life, property or person or the life, property or person of another.

■

Statutory construction is a question of law which we review *de novo. L & W Constr. Co. v. Wisconsin Dep't of Revenue,* 149 Wis. 2d 684, 688–89, 439 N.W.2d 619, 620 (Ct. App. 1989). We must ascertain the legislature's intent by first looking to the language of the statute. *Id.* at 689, 439 N.W.2d at 620. If the language of the statute is unambiguous we are prohibited from looking beyond the language of the statute to ascertain its meaning. *Marshall-Wisconsin Co. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987).

■

The language of sec. 30.68(2), Stats., is clear. It prohibits negligent operation of a watercraft vis-a-vis the life, property or person of any individual. The statutory language does not specify or limit where the individual or the property must be located. We conclude that the trial court's incorporation of sec. 30.68(2) in the jury instruction correctly stated the law. *See McMahon v. Brown,* 125 Wis. 2d 351, 354, 371 N.W.2d 414, 416 (Ct. App. 1985).

---

language of subsec. (4) is not included in the negligence instruction given to the jury. Therefore, we will not address that part of Seipel's argument pertaining to sec. 30.68(4).

Seipel also argues that the instruction should not have been given because no evidence supports the claim that he operated his boats in a negligent, careless or reckless manner. However, we have already noted that Seipel's exhaustive use of the river could constitute negligence in relation to the duty owed the Johnsons. We therefore reject Seipel's argument and conclude that the instruction was properly framed with regard to the evidence. *See id.*

## CLOSING ARGUMENT

Seipel contends that his possible violation of a city of Mequon ordinance which prohibits operation of boats at faster than "slow-no-wake" speeds within 500 feet of a public boat landing was improperly addressed by the Johnsons in final argument to the jury. Seipel registers this argument on two fronts. First, he contends that the trial court should have made a threshold determination that the area in question was a public landing within the meaning of the ordinance before the matter was broached to the jury. Second, Seipel contends that the Johnsons' closing argument confused and misled the jury because there was no evidence that the Johnsons' shoreline is 500 feet from a public boat landing. We reject both arguments.

We have examined the complete transcript of the final arguments. While the Johnsons' counsel did allude to the public landing area and the relative distances, nowhere did counsel expressly argue or request that the jury premise any finding of negligence upon this narrow ground under the ordinance. In fact, at one point in his closing, counsel advised the jury that the Johnsons' claim against Seipel was not premised upon the "no-wake-zone" but rather upon the danger caused by Seipel

to the properties abutting the river. In addition, the Johnsons did not request, and the jury did not receive, any instruction that violation of this ordinance could serve as a basis for a negligence finding against Seipel. Rather, the jury was instructed that it could find negligence only under the common-law duty of ordinary care. We reject Seipel's claim that this case was argued to the jury as a negligence *per se* action based upon the violation of an ordinance.

Even if we were to conclude that the negligence consequences of a violation of the "slow-no-wake" ordinance were before the jury, we reject Seipel's arguments. We know of no law, and Seipel cites us to none, which requires the trial court rather than the jury to determine that the elements of a relevant statute or ordinance have been satisfied before negligence premised upon a violation of a statute or ordinance can be submitted to the jury. Rather, the duty of the trial court on this question is the same as with all instructions—to assure that the instruction is supported by the evidence. *State v. Gaudesi,* 112 Wis. 2d 213, 223, 332 N.W.2d 302, 306 (1983).

Here, the ordinance had been received into evidence and certain testimony, including Seipel's, supported an inference that the area in question had been used as a public boat landing. Seipel himself testified that he often used the area, 176 feet across the river from the Johnsons' property, to launch his boats and that he saw others launch boats from that same area. He also referred to the area as a public park and estimated that it was within 500 feet of the Johnsons' property. The Johnsons' closing argument addressed this aspect of the evidence. No impropriety occurred.

## DAMAGES

The jury awarded the Johnsons $1000 for loss of the use of enjoyment of their property, $6000 for loss of property value, and $15,500 for erosion abatement. The award for lost property value compensated the Johnsons for the diminished value of their property which occurred as a result of the erosion. The award for erosion abatement compensated the Johnsons for the cost of installing a wall along the shoreline to prevent further erosion of their land.

On appeal, Seipel claims that the award for "erosion abatement" is really an award for the cost of repairing the Johnsons' property. Therefore, he reasons that the Johnsons are only entitled to recover for either cost of repair or diminished land value, whichever is lower, but not both. *See* Wis J I—Civil 1804. Although Seipel states the correct rule, we reject his application of it to this case.

The costs of diminished value and restoration or repair may not both be assessed in a property damage award. *Pedelty v. Wisconsin Zinc Co.,* 148 Wis. 245, 252, 134 N.W. 356, 358 (1912); Wis J I—Civil 1804. The facts of this case, however, demonstrate that the rip-rap barrier placed on the Johnsons' shoreline was not a repair, but rather an effort to mitigate damages. It was constructed while the water-skiing operation was continuing in an effort to protect the Johnsons' already damaged shoreline from further deterioration. Although the Johnsons filled in some of the eroded area when constructing the barrier, their land was not "restored" or "repaired" to its pre-erosion condition. The filler and rip-rap barrier were added to prevent breaking away of the remaining soil.

 A person whose property has been damaged is obligated to mitigate such damage. *Kuhlman, Inc. v. G. Heileman Brewing Co.,* 83 Wis. 2d 749, 752, 266 N.W.2d 382, 384 (1978). *See also* Wis J I—Civil 1731, and comment thereto. We conclude that the award for erosion abatement was not for costs of repairing the Johnsons' property. Rather, it was for the costs of mitigating further damage to their property. We know of no authority prohibiting the awarding of damages for both mitigation and diminished value. Therefore, we affirm.

### SURPRISE WITNESS

During the course of trial, a potential defense witness, Todd Weber, contacted Seipel. An offer of proof established that Weber would testify that he had lived near the Johnsons since 1961 and had observed shoreline erosion to the Johnsons' property prior to Seipel's arrival on the river. The Johnsons moved to preclude Weber's testimony, arguing surprise. The trial court granted the motion.

 When a "surprise" witness is introduced by a party, the proper exercise of discretion requires the trial court to determine if the surprised party had reason to believe the witness would be called and whether the unfair surprise outweighs the probative value of the testimony. *Meurer v. ITT Gen. Controls,* 90 Wis. 2d 438, 454, 280 N.W.2d 156, 164 (1979) (*citing Fredrickson v. Louisville Ladder Co.,* 52 Wis. 2d 776, 191 N.W.2d 193 (1971)). Here, the trial court ruled that the witness' testimony should be excluded because it was not impeachment testimony.

We question the rationale of this ruling in light of the factors set forth in *Meurer*. However, this court will not reverse a trial court's ruling if the ruling is correct for other reasons and the record reveals a factual underpinning that would support the proper findings. *State v. Fishnick*, 127 Wis. 2d 247, 264, 378 N.W.2d 272, 281 (1985). Facts supporting the trial court's ruling were: the Johnsons had no reason to believe that Weber would be called as a witness as Seipel neither named Weber as a witness nor previously knew of his potential as a witness; no practical opportunity for the Johnsons to depose Weber existed since a continuance to do so would have interrupted an ongoing jury trial; and the trial court had earlier ordered sanctions against Seipel for dilatory conduct in naming witnesses, and had rescheduled the original trial date.

Detracting from the trial court's ruling is the probative value of Weber's testimony, which supports Seipel's claim that the water-skiing activities were not the cause of the Johnsons' damages. However, corroborative evidence of Seipel's position on this issue was already in the record from another longtime neighbor of the Johnsons. Weber's testimony would have merely been cumulative. Weighed against the prejudice to the Johnsons and the effect upon the ongoing trial, we conclude that the trial court's ultimate ruling precluding Weber's testimony was correct.

*By the Court.*—Judgment affirmed.