SOUTH MILWAUKEE SAVINGS BANK, Plaintiff-Appellant,

v.

Gary J. BARCZAK, in his official capacity as Clerk of Courts, unknown Clerk of Courts Docketing Clerk and Rod Lanser, Defendants-Respondents.†

Court of Appeals

*No. 97–3759. Oral argument May 12, 1999.—Decided July 27, 1999.*

(Also reported in 600 N.W.2d 205.)

†Petition to review granted.

522

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark E. Sostarich* of *Petrie & Stocking, S.C.*, of Milwaukee, with oral argument by Mark E. Sostarich.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Mark A. Grady*, Principal Assistant Corporation Counsel, of the Office of Milwaukee County Corporation Counsel.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J. South Milwaukee Savings Bank (South Milwaukee) appeals from the trial court's grant of summary judgment to the former Milwaukee County Clerk of Courts in South Milwaukee's suit alleging that an employee of the clerk of courts office violated § 806.10(3), STATS., by failing to docket, at the proper time, a judgment granting South Milwaukee money damages which, in turn, impaired South Milwaukee's collection attempts.[1] South Milwaukee argues that the trial court erred in deciding that: (1) the two-year statute of limitations found in § 893.93(2)(a), STATS., not the six-year statute of limitations in § 893.93(1)(a), STATS., applies to actions under § 806.10(3); (2) South Milwaukee's cause of action accrued on September 27, 1994, the day after the clerk's office received the judgment, and not when South Milwaukee discovered the

---

[1] Also listed in the complaint as defendants are "unknown docketing clerk" and Rod Lanser. No clerk has ever been identified, and no claims are raised regarding Rod Lanser. Thus, we assume that the former Milwaukee County Clerk of Courts is the sole defendant in this suit.

524

delayed docketing; (3) the requirement in § 806.10(3) that judgments be docketed "at the proper time" was ambiguous in describing when a judgment should be docketed and that "at the proper time" meant "as soon as practicable" or "within a reasonable time";[2] and (4) the respondent complied with § 806.10(3) by docketing the judgment the day after receipt of the judgment. In addition, South Milwaukee argues that the trial court improperly expanded the record without notice and that it was entitled to summary judgment. Because we agree with South Milwaukee that the six-year statute of limitations should govern actions under § 806.10(3), and because we are satisfied that under the undisputed facts of this case, as a matter of law, the respondent violated § 806.10(3) when the clerk failed to docket the judgment until the day after receipt, we reverse and

[2] The respondent argued, and the trial court agreed, that § 806.10(3)'s legislative history indicates that "at the proper time" means "as soon as practicable" and "reasonable." Respondent argued that an analysis of § 806.10(3)'s legislative history revealed that in the 1800's our legislature passed two laws, which appeared to be overlapping or duplicative, requiring the clerk to docket judgments "as soon as practicable" and "at the proper time," respectively. The two statutes existed side by side until 1897 when a revisor's bill eliminated the former. The respondent argued that despite eliminating this section, the revisor did not, and could not, intend any substantive change in the statute's meaning. Because the revisor could not have intended any substantive change in the statute's meaning, the respondent argued that the two statutes must be interpreted together so that "at the proper time" means "as soon as practicable." The trial court agreed with the respondent that statutory history and "statutory common sense" dictate that "at the proper time" means "as soon as practicable," and the trial court then concluded that "as soon as practicable" is consistent with "reasonable."

remand and direct the trial court to enter partial summary judgment for South Milwaukee.[3]

---

[3] As an initial matter, we decline to address an argument raised by the respondent for the first time on appeal that the docketing date is irrelevant because the unrecorded conveyances remain valid against a judgment creditor. The respondent concludes that the time of docketing is irrelevant because the unrecorded quitclaim deed executed by Rooney rendered the judgment obtained against him ineffective. The respondent concedes that under § 706.08(1)(a), STATS., conveyances that are not recorded are void against any subsequent good faith purchasers for value; however, the respondent argues that an unrecorded conveyance remains valid against a judgment creditor, because a judgment creditor is not a good faith purchaser for value. Because South Milwaukee is a judgment creditor, not a good faith purchaser, the respondent concludes that the unrecorded quitclaim deed is valid against South Milwaukee and precludes recovery. Therefore, the Respondent reasons, if the judgment itself is ineffective, the time that the clerk's office actually docketed the judgment is irrelevant and could not have harmed South Milwaukee.

As a general rule, we refuse to consider issues raised for the first time on appeal. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980). The respondent acknowledges that it raises this argument for the first time on appeal but cites *Johnson v. Seipel*, 152 Wis. 2d 636, 449 N.W.2d 66 (Ct. App. 1989), for the proposition that this court may affirm the circuit court's decision based on any ground contained in the record. We are satisfied that *Seipel* is distinguishable on its facts and does not allow respondent to raise this issue for the first time on appeal. Further, at oral argument, counsel for South Milwaukee asserted that had the respondent raised this argument at trial, South Milwaukee would have challenged the validity of the deeds as well as their authenticity. Thus, it would be premature for us to address this issue here.

## I. BACKGROUND.

On October 13, 1993, South Milwaukee filed an action against Nikolau-Rooney Real Estate Investment Corporation for a money judgment on a promissory note and guarantee of the note. South Milwaukee also sued John W. Rooney, Jr., because he signed a personal guarantee for the corporation's loan. On September 26, 1994, the circuit court granted summary judgment in favor of South Milwaukee in its suit against both the corporation and Rooney, and awarded $304,105.91 in damages.

After the hearing, South Milwaukee's attorney gave the trial court a proposed order and judgment which the trial court reviewed and signed. South Milwaukee's attorney then obtained the court file, went to the Milwaukee County judgment clerk's office at approximately 3:30 p.m., and paid the appropriate judgment and docketing fees. The clerk's office entered the judgment, but for reasons never explained, failed to docket the judgment until the following day despite the fact that the clerk's office was open until 5:00 p.m.[4]

The judgment encumbered two rental properties owned by Rooney. Although Rooney was out of the country when the trial court issued its judgment, his wife was present in the courtroom and heard the trial court's decision. After the trial court granted summary judgment in favor of South Milwaukee, Mrs. Rooney went home and retrieved two quitclaim deeds dated September 12, 1994, that allegedly conveyed Rooney's interest in the property to her. Mrs. Rooney, armed with her two quitclaim deeds, returned to the court-

---

[4] This court takes judicial notice of the fact that the filing clerk's office in the Milwaukee County Clerk of Courts' office closes at 5:00 p.m. This has been the practice for many years.

house and went to the Register of Deeds office where she had the quitclaim deeds recorded. This occurred after the clerk's office entered South Milwaukee's judgment but before it was docketed.

Evidence submitted in support of the summary judgment motion revealed that in September of 1994, the clerk's office was in the process of implementing a computerized system for recording, entering, and docketing judgments. The old "manual system" required two steps: (1) the judgment would be presented, the appropriate fee paid, and the clerk would sign the judgment and formally enter it; and (2) the docketing clerk would type the judgment into what eventually became the Judgment Docket. Depending on the circumstances, the entire process could take between one and three days.[5]

Additionally, despite the statutory mandate that judgments be docketed "at the proper time," the clerk's office devoted only a few hours a day to docketing judgments. On the day South Milwaukee's judgment was entered the clerk's office stopped docketing judgments at 3:20 p.m. and did not begin again until the following day.

Unaware of the delayed docketing, South Milwaukee proceeded in its attempt to collect the debt owed to it by Rooney. To satisfy the debt, South Milwaukee obtained an execution on its judgment and purchased the Rooney rental properties at a Sheriff's sale for

---

[5] We are advised that under the current computerized system, the judgment is entered and docketed at the same time by the same clerk. The clerk's office did not switch to the new system until January of 1995. At the time at issue in this case, both systems were in place and the old system was being phased out. The judgment in question was entered and docketed using the old manual process.

$115,000. South Milwaukee then filed a collection action against the Rooneys. As a result, Mrs. Rooney and South Milwaukee entered into a stipulated judgment that stated that South Milwaukee's judgment was for debt incurred in the interest of the marriage or family and was subject to satisfaction from all marital assets. This judgment was taken to the clerk's office and entered on May 15, 1995. Although South Milwaukee paid the docketing fee, the Milwaukee County Clerk's Office *never* docketed this judgment.

Unbeknown to South Milwaukee, Mrs. Rooney borrowed $78,000 from Wauwatosa Savings Bank (Wauwatosa) and gave the bank a mortgage on the rental properties as security. When it learned of the mortgage, South Milwaukee filed an action against Mrs. Rooney and Wauwatosa seeking a determination of the priority of South Milwaukee's lien as to Wauwatosa's mortgage; and if Wauwatosa held the superior position, a determination that the deed transfer was fraudulent; further, South Milwaukee requested the appointment of a receiver to sell the property to satisfy the mortgage and apply the balance to South Milwaukee's claim.

In the priority lien suit, summary judgment was granted in favor of Wauwatosa because Wauwatosa held a priority lien interest as a good faith purchaser. South Milwaukee contends that if the original judgment would have been docketed before Mrs. Rooney filed the quitclaim deeds, South Milwaukee would have had a priority position over Wauwatosa. South Milwaukee started this action against the respondent arguing that pursuant to § 806.10(3), STATS., the clerk's office failed to docket the judgment "at the proper time" and South Milwaukee was entitled to treble damages. The statute in question reads:

> Every clerk of circuit court who enters a judgment or decree and enters upon the judgment and lien docket a date or time other than that of its actual entry or *neglects to enter the same at the proper time shall be liable in treble damages to the party injured.*

Section 806.10(3), Stats., 1995–96 (emphasis added). The trial court granted the respondent's motion for summary judgment on several grounds. It found that: (1) the two-year and not the six-year statute of limitations applied; (2) South Milwaukee's cause of action accrued on September 27, 1994 and not at a later date; therefore, the statute of limitations had run on this claim; (3) the wording of § 806.10(3), Stats. that docketing be done "at the proper time" was ambiguous and actually meant "as soon as practicable" and within a "reasonable" time; and (4) applying this interpretation of the language, the respondent complied with the statute by docketing the South Milwaukee judgment on September 27, 1994. This appeal follows.

## II. Analysis.

South Milwaukee's appeal requires this court to determine the proper interpretation and application of a Wisconsin statute. The interpretation of a statute is a question of law which we review *de novo* without deference to the circuit court's decision. *See Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 748, 512 N.W.2d 487, 491 (1994); *In re I.V.*, 109 Wis. 2d 407, 409, 326 N.W.2d 127, 128 (Ct. App. 1982).

Because our interpretation of the statute requires us to reverse the trial court and apply the six-year statute of limitations, South Milwaukee has stated a

viable cause of action and its motion for summary judgment must be considered. Our review of a trial court's denial of summary judgment is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–16, 401 N.W.2d 816, 820 (1987). Summary judgment should be granted if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RULE 802.08(2), STATS.

A. The six-year statute of limitations applies to actions brought under § 806.10(3), STATS.

South Milwaukee maintains that the circuit court erred in finding that the two-year statute of limitations contained in § 893.93(2)(a), STATS., governs actions under § 806.10(3), STATS. Instead, it argues the six-year statute of limitations should apply. We agree.

In *Jovoco*, the Wisconsin Supreme Court addressed the issue of whether a two-year, or a six-year statute of limitations governed a Wisconsin statute that prohibited employers, except under certain conditions, from deducting amounts from an employee's wages, absent written authorization from the employee. In deciding that the six-year statute of limitations applies here, we replicate the supreme court's analysis in *Jovoco* in which the supreme court determined that the six-year statute of limitations applied to a wage statute. This analysis requires us to interpret the statute in question, to ascertain its intended purpose, and to decide whether the statute redressed a public wrong or remedied an individual harm. *See Jovoco*, 181 Wis. 2d at 761–63, 512 N.W.2d at 495–97. After applying the *Jovoco* analysis, we conclude that § 806.10(3), STATS., its intended purpose, and, in partic-

ular, its effect on individuals, requires the application of the six-year statute of limitations.

*1. The plain language of § 806.10(3), STATS., does not indicate which statute of limitations to apply.*

The plain language of § 806.10(3), STATS., as applied to the statutes of limitations found in § 893.93, STATS., creates a legitimate debate over which is the proper statute of limitations. Section 893.93(1)(a) imposes a six-year statute of limitations on actions upon liabilities "created by statute when a different limitation is not prescribed by law." Section 806.10(3) plainly creates and imposes liability upon any clerk who fails to docket a judgment at the proper time. By contrast, § 893.93(2)(a) imposes a two-year statute of limitations upon an action by a private party upon a statute penalty. Since South Milwaukee is a private party and § 806.10(3) imposes treble damages, these facts make § 806.10(3) a statute penalty. Therefore, the plain language of § 806.10(3) is of little help in deciding which statute of limitations must be applied. Because the statutory language does not indicate which statute of limitations to apply, we next consider the statute's intended purpose, and determine whether it redresses a public wrong or remedies an individual harm.

*2. Section 806.10(3), STATS., like the wage statute at issue in Jovoco, remedies an individual harm.*

In *Jovoco*, the supreme court noted that the two-year statute of limitations under § 893.93(2)(a), STATS., had previously only been interpreted to apply to state anti-trust actions. *See Jovoco*, 181 Wis. 2d at 760, 512 N.W.2d at 495 (citing *Open Pantry Food Marts v. Fal-*

*cone*, 92 Wis. 2d 807, 286 N.W.2d 149 (Ct. App. 1979); *Segall v. Hurwitz*, 114 Wis. 2d 471, 339 N.W.2d 333 (Ct. App. 1983)). Further, the supreme court characterized the anti-trust laws as remedial provisions intended to "preserve the free enterprise system." *See Jovoco*, 181 Wis. 2d at 761, 512 N.W.2d at 496 (quoting *City of Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976)); *see also Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972) ("Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress."). Finally, the supreme court articulated that the anti-trust law is punitive in nature because it provides for treble damages which amounts to a statutory penalty. *See Jovoco*, 181 Wis. 2d at 761, 512 N.W.2d at 496. For all these reasons, the supreme court found that the two-year statute of limitations governs actions brought under the anti-trust statutes. *See Jovoco*, 181 Wis. 2d at 760–61, 512 N.W.2d at 495–96. However, in *Jovoco*, the Wisconsin Supreme Court asserted that the statute of limitations analysis was not complete until the court considered the purpose behind the substantive statute being analyzed. *See id.* at 761, 512 N.W.2d at 496 ("We are not persuaded by the defendants' analogy . . . because the defendants do not acknowledge the different purposes of the two statutes.").

The *Jovoco* court found that anti-trust statutes were designed to benefit the public; whereas the wage statute was designed to benefit individuals. *See id.* at 761–62, 512 N.W.2d at 496. Also, it observed that anti-trust laws "encourage private enforcement in an area where government regulation alone would not be adequate." *Id.* at 761, 512 N.W.2d at 496. By contrast, the supreme court stated that the wage statute provided only a remedy for individuals rather than the public as

a whole. *See id.* at 762, 512 N.W.2d at 496. Ultimately the supreme court applied the six-year statute of limitations, concluding that insufficient similarity existed between the wage statute and the anti-trust statutes to apply the two-year statute of limitations. *See id.* ("There is not enough similarity between [the wage statute at issue] and the state anti-trust law to extend the applicability of the two year statute of limitations to claims brought under [the wage statute].").

Using the teachings of *Jovoco*, the parties draw an elaborate set of contrasts and comparisons between § 806.10(3), STATS., and the Wisconsin anti-trust laws and wage statutes in arguing that § 806.10(3) either redresses a public wrong or remedies an individual harm. South Milwaukee contends that § 806.10(3), like the wage statute, attempts to remedy a harm to the individual and thus the six-year statute of limitations should apply. Conversely, the respondent submits that § 806.10(3) is punitive-remedial and exclusively statutory, like the anti-trust laws, and the two-year statute of limitations should apply.

Following the court's reasoning in *Jovoco*, we find insufficient similarities between § 806.10(3), STATS., and Wisconsin anti-trust law to apply the two-year statute of limitation which governs anti-trust lawsuits. We find South Milwaukee's comparison of § 806.10(3) to the wage statute at issue in *Jovoco* to be more persuasive than the respondent's. Although true that § 806.10(3) has some of the characteristics of anti-trust statutes, because it provides for treble damages which suggests a punitive intent, and the general public may derive some benefit from the statute's operation, § 806.10(3) does not provide public and private enforcement mechanisms, and does not create criminal penalties like the anti-trust statutes. In addition, we

find that the benefit derived by the general public from the operation of the statute, specifically society's interests in the regulation of property, is substantially outweighed by the benefit derived by individuals. Therefore, we conclude that § 806.10(3), like the wage statute, provides an individual remedy for damages to an individual party caused by the acts and omissions of the clerk's office, thus leading to the application of the six-year statute of limitations.

*3. The two-year statute of limitations must be narrowly construed.*

Moreover, unless the legislature clearly requires the application of a specific statute of limitations, case law requires application of the six-year statute of limitations. Reviewing courts must interpret statutes of limitations so that "no person's cause of action will be barred unless clearly mandated by the legislature." *Saunders v. DEC International, Inc.*, 85 Wis. 2d 70, 74, 270 N.W.2d 176, 177 (1978). Absent a clear legislative mandate, case law instructs that the two-year statute of limitations must be narrowly construed in favor of plaintiffs to avoid extinguishing otherwise meritorious claims. *See Lovett v. Mt. Senario College, Inc.*, 154 Wis. 2d 831, 836, 454 N.W.2d 356, 358 (Ct. App. 1990). Here, the Wisconsin legislature has not clearly mandated the application of either statute of limitations to the facts of cases like the instant one. Noting that the two-year statute of limitations must be narrowly construed, and observing that the application of the two-year statute of limitations would extinguish South Milwaukee's claim, we therefore determine that § 806.10(3), STATS., is covered by the six-year statute of limitations. Thus,

we reverse the circuit court's ruling and find that the six-year statute of limitations contained in § 893.93(1)(a), STATS., governs actions under § 806.10(3), STATS.[6]

B. The clerk's office violated § 806.10(3), STATS., when it received South Milwaukee's judgment and failed to docket it until the following day.

Next, we address the issue of whether the clerk's office violated § 806.10(3), STATS. The trial court found that the language, "at the proper time," was ambiguous because it was capable of more than one interpretation, and resorted to outside rules of construction and legislative history in determining that the statute permitted docketing "as soon as practicable," or within a "reasonable" time.[7] South Milwaukee claims that "at the proper time" is unambiguous, and means that the clerk's office is required to docket judgments "immediately." We need not decide whether the statute is ambiguous because, under either interpretation, we conclude that, under the facts of this case, the delayed docketing violated the statute.

██ Ordinarily a court "must apply statutes as they are written, unless to do so would lead to an absurd result that did not reflect the legislature's intent." *State v.*

_____

[6] Because we find that South Milwaukee's action is governed by the six-year statute of limitations and the instant action was timely filed, we need not determine exactly when South Milwaukee's cause of action accrued. Accordingly, we will not consider whether the application of the discovery rule is proper. *Cf. Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (holding that if a decision on one point disposes of an appeal, the appellate court need not decide other issues raised).

[7] *See supra* n.2.

*Young*, 180 Wis. 2d 700, 704, 511 N.W.2d 309, 311 (Ct. App. 1993); *see also DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982) ("When statutory language is clear and unambiguous, no judicial rule of construction is permitted, and the court must implement the express intention of the legislature by giving the language its ordinary and accepted meaning.").

There can be no doubt that if we accept South Milwaukee's interpretation, the clerk's office violated the statute because the judgment was not docketed immediately. On the other hand, the respondent urges us to find that the statutory language, "at the proper time," allows the clerk twenty-four hours to docket a judgment. The respondent relies on the Office of Court Operations in the Director of State Courts' Office (Office) for this contention, and argues that the Office's interpretation must be afforded great weight. We disagree.

The Office has not interpreted § 806.10(3), STATS. In several reports and in the model record keeping procedures generated by the Office there is a recommendation that judgments be docketed "within twenty-four hours (same day preferred)." However, nowhere in the reports or the model procedures is there a specific mention of § 806.10(3), nor do the reports or the model procedures interpret this statute. We view the Office's suggestion that courts docket judgments within twenty-four hours "to avoid being sued for treble damages" to be merely a warning to clerks with no precedential value.[8] We do not read the "twenty-four

---

[8] In addition, we see limited relevance to reports written by the Office that involve suggested docketing practices in Rock and Clark Counties, counties significantly smaller than Milwaukee County.

hour (same day preferred)" standard recommended by the Office and included in the technical assistance project report as a grant of immunity to the clerk's office for every judgment docketed within twenty-four hours of receipt of the judgment. We read the recommendation as a caveat to the clerk's office of the increasing likelihood of liability for treble damages if a judgment is not docketed within twenty-four hours. The twenty-four hour standard is not both sword and shield that imposes liability on the clerk's office for judgments docketed after the twenty-four hours have passed and protects the clerk's office from all liability for judgments docketed within twenty-four hours.[9]

1. *In determining if the docketing statute, § 806.10(3), STATS., has been violated, we look at all of the individual circumstances in each case.*

---

[9] Further, we observe that the twenty-four hour rule must have been only a suggested practice and not a statutory interpretation because the "rule" would be certain to be violated over weekends and holidays when judgments are filed in the clerk's office at the close of the business day. In addition, the respondent has argued that the judgment was docketed at 9:01 a.m. the morning after it was entered, "within one working hour (or at most two) of its entry." Counting only "working hours" against the twenty-four hour rule avoids the problem created by weekends and holidays; however, considered together, the respondent's arguments would render § 806.10(3), STATS., nearly meaningless. If we are required to afford the clerk's office a twenty-four hour window in which to docket judgments, and we may only count working hours in determining whether a judgment was docketed at the proper time, the clerk's office would have three working days to docket the judgment. We conclude that such an interpretation is overly broad and unreasonable, given the legal significance attached to docketed judgments.

The circumstances in this case indicate that South Milwaukee's judgment was not docketed "at the proper time." The judgment was presented at 3:20 p.m. The clerk's office did not close until 5:00 p.m. The respondent has offered no explanation for why the clerk could not docket the judgment in the hour and a half between its receipt and the close of business.[10] Indeed, evidence was submitted that revealed that the deputy clerks were never informed that the date and time a judgment was docketed carried any legal significance. The failure of the clerk's office to ever docket South Milwaukee's judgment against Mrs. Rooney suggests that the Milwaukee County Clerk of Courts Office did not give docketing a high priority. Further, the clerk's office did not docket judgments throughout the day, or at set times during the day, but docketed judgments sporadically. For example, on September 22, 1994, the clerk's office docketed judgments from 9:55 a.m. until 10:50 a.m.; on September 26, 1994, from 11:20 a.m. until 3:20 p.m.; and on September 28, 1994, from 11:46 a.m. until 11:54 a.m.

We conclude that in determining if the docketing statute has been violated we need to look at the individual circumstances presented in each case. Thus, we next consider the trial court's and the respondent's interpretation of the language, "reasonable" or "as soon as practicable," to the circumstances present here to determine whether there is a violation under this interpretation.

---

[10] During the time left in the day, we note that Mrs. Rooney had ample time to go home from the courthouse, retrieve her quitclaim deeds, return to the courthouse, and have the deeds recorded before 5:00 p.m.

539

*2. Under either interpretation of the docketing statute, § 806.10(3), STATS., suggested by the respondent, the circumstances indicate that the Milwaukee County Clerk's Office violated the statute.*

Whether we interpret § 806.10(3), STATS., to require the clerk's office to docket judgments as soon as practicable or within a reasonable time, as posited by the respondent, here the clerk's office did neither. To determine whether the clerk's office docketed South Milwaukee's judgment within a "reasonable" time or "as soon as practicable," we must give those words their commonly understood meaning. *Greenebaum v. Department of Taxation*, 1 Wis. 2d 234, 237, 83 N.W.2d 682, 684 (1957); *Lawver v. Boling*, 71 Wis. 2d 408, 414, 238 N.W.2d 514, 517 (1976) (construing the term "employee" in an insurance policy). The respondent has not offered any evidence explaining the delay in docketing South Milwaukee's judgment that would allow us to determine that the clerk's office docketed South Milwaukee's judgment as soon as practicable, or within a reasonable time. There was no evidence presented as to why the judgment was not docketed on the same day it was entered. If there were no intervening circumstances that caused the delay, we must conclude that the judgment was not docketed as soon as practicable, or within a reasonable time. Therefore, even if we accept the trial court's and the respondent's interpretation of § 806.10(3), STATS., the circumstances indicate that the clerk did not docket the judgment within a "reasonable" time, or as "soon as practicable." For all of these reasons, we conclude that the clerk's office failed to docket South Milwaukee's judgment within the

proper time in violation of the statute.[11] Having reversed the circuit court's decision with regard to the statute of limitations issue, and having found a violation of the docketing statute, § 806.10(3), we remand this case to the trial court and direct the trial court to enter partial summary judgment in favor of South Milwaukee on its claim that the clerk of courts office violated § 806.10(3).

*By the Court.*—Order reversed and cause remanded with directions.

[11] Finally, we decline to address South Milwaukee's argument that the trial court improperly expanded the record without notice because that issue is now moot.