f 1.
MICHAEL J. GABLEMAN, J.
This is a review of a published decision of the court of appeals that reversed the Milwaukee County circuit court's[1] denial of Aurora Healthcare, Inc. and Healthport Technologies, LLC's (collectively referred to as "Healthport") motion for summary judgment and remanded the case with directions to grant Healthport's motion for summary judgment. Moya v. Aurora Healthcare, Inc., 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336.
f 2. Today, we are asked to interpret the meaning of the phrase "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b)4.-5. (2013-14),[2] which exempts a "patient or a person authorized by the patient" from paying certification charges and retrieval fees for obtaining copies of the patient's health care records. More particularly, we are asked to determine whether an attorney whose client authorized him via a HIPAA[3] release form to obtain her health care records may *43 benefit from this fee exemption. Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions. Consequently, the decision of the court of appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.
¶ 3. We begin with a brief factual background and description of the procedural history. We then set forth the standard of review and the relevant rules for statutory interpretation. We then conclude that Carolyn Moya's ("Moya") attorney is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from the certification charge and retrieval fee authorized by that statute. Next, we address Healthport's arguments that the doctrines of voluntary payment and waiver bar Moya's claim.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
A. The Statutes Governing Access to Health Care Records
¶ 4. Access to patient health care records is governed by Wis. Stat. § 146.83. Under subsec. (3í), a health care provider shall, subject to exceptions that are inapplicable here, provide copies of a patient's *44 health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b)." § 146.83(3f)(a).
f 5. Pursuant to para, (b), health care providers may impose certain costs on the person requesting health care records under para, (a):
(b) Except as provided in sub. (If), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
2. For microfiche or microfilm copies, $1.50 per page.
3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.
Wis. Stat. § 146.83(3f)(b) (emphasis added). According to subd. 4. and subd. 5., the patient and a person authorized by the patient are exempt from the certification charge and retrieval fee. This statute, though, does not provide a definition for a "person authorized by the patient."
¶ 6. Instead, a "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as
*45 the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child -under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the person representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (l)(d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.
(Emphasis added). Because this definition uses the disjunctive "or," see Hull v. State Farm Mut. Auto. Ins., 222 Wis. 2d 627, 638, 586 N.W.2d 863 (1998) (" '[0]r' should be interpreted disjunctively."), in order to be a person authorized by the patient under Wis. Stat. § 146.83(3f)(b)4.-5., and therefore enjoy exemption from the certification charge and retrieval fee, a person must fall into only one of the above categories of persons. One of the categories in the above definition is "any person authorized in writing by the patient," and it is this category on which Moya relies in arguing that her attorney is a "person authorized by the patient" under § 146.83(3f)(b)4.-5.
B. Moya's Class Action Lawsuit
¶ 7. This case comes to us by way of a class action lawsuit filed by Moya on behalf of not only herself but *46 all other similarly situated persons who have been billed the certification charge and retrieval fee by Healthport for obtaining their own healthcare records. The class action arose from Moya's personal injury claim[4] in which Moya hired Welcenbach Law Offices, S.C. to represent her and the law firm had to pay the certification charge and retrieval fee, despite the fact that Moya had authorized the law firm in writing to obtain those records.
¶ 8. Moya authorized her attorney, Robert Wel-cenbach, to obtain her health care records by signing HIPAA release forms giving to Welcenbach Law Offices, S.C. "authoriz[ation] to receive [her] health information."
¶ 9. Atty. Welcenbach subsequently submitted requests for Moya's health care records,[5] and Health-port, when fulfilling the requests, imposed certification charges and retrieval fees pursuant to Wis. Stat. § 146.83(3f)(b)4.-5. Atty. Welcenbach paid the certification charges and retrieval fees and passed the associated costs to Moya by deducting the costs from the settlement proceeds resulting from her personal injury claim.[6]
*47 ¶ 10. At the time Healthport invoiced Atty. Wel-cenbach, he paid the costs, and he did not specifically dispute them. However, he had on multiple previous occasions disputed the imposition of such costs in other cases.
¶ 11. In response to Healthport's imposition of the certification charges and retrieval fees, Moya filed this class action lawsuit. She argues that Healthport violated Wis. Stat. § 146.83(3f)(b)4.-5. when it imposed the certification charges and retrieval fees because her attorney is a "person authorized by the patient," thereby exempting her attorney from paying the certification charges and retrieval fees.
¶ 12. Healthport moved to dismiss Moya's complaint for failure to state a claim, and the circuit court[7] denied Healthport's motion. Healthport filed an answer, and the parties underwent limited discovery. After the limited discovery, Healthport filed a motion for summary judgment asking the circuit court to dismiss Moya's claim with prejudice. The circuit court[8] denied Healthport's motion. Healthport filed a motion for reconsideration, and the circuit court[9] again denied Healthport's motion.
¶ 13. Healthport filed an interlocutory appeal, and the court of appeals reversed the circuit court's denial of Healthport's motion for summary judgment and remanded the case with instructions to grant Healthport's motion. Moya, 366 Wis. 2d 541, ¶ 1. The *48 court of appeals determined that Moya's attorney was not a "person authorized by the patient" and therefore Healthport could impose the certification charges and retrieval fees on Moya's attorney. Id., ¶ 16. Judge Kessler dissented stating that she would uphold the circuit court's denial of Healthport's motion for summary judgment and would conclude that Healthport could not impose the certification charge and retrieval fee. Id., ¶¶ 28-29 (Kessler, J., dissenting).
¶ 14. Moya petitioned this court for review, which we granted in order to determine whether her attorney is a "person authorized by the patient" and thus exempt from paying the certification charge and the retrieval fee found in Wis. Stat. § 146.83(3f)(b)4.-5.
II. STANDARD OF REVIEW
¶ 15. "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." Racine County v. Oracular Milwaukee, Inc., 2010 WI 25, ¶ 24, 323 Wis. 2d 682, 781 N.W.2d 88 (quoting Hocking v. City of Dodgeville, 2009 WI 70, ¶ 7, 318 Wis. 2d 681, 768 N.W.2d 552). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). In making this determination, this court applies a two-step test. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). Under the first step, this court asks if the plaintiff stated a claim for relief. Id. at 315. Under the second step, this court applies the summary *49 judgment statute and asks if any factual issues exist that preclude summary judgment. Id.
¶ 16. "We review questions of statutory interpretation and application independently, but benefiting from the discussions of the circuit court and the court of appeals." State v. Grunke, 2008 WI 82, ¶ 10, 311 Wis. 2d 439, 752 N.W.2d 769.
III. DISCUSSION
A. The Rules of Statutory Interpretation
¶ 17. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with the text of the statute. Id., ¶ 45 (quoting Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). If the text of the statute is plain and unambiguous, our inquiry stops there. Id. (quoting Seider, 236 Wis. 2d 211, ¶ 43).
¶ 18. If the text is ambiguous, we must look beyond the text to other, extrinsic sources of information, such as legislative history, to interpret the statute. Id., ¶ 46. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶ 47. Even without ambiguity, though, we may consult extrinsic sources to confirm our understanding of the plain language of a statute. Id., ¶ 51.
*50 1 19. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id., ¶ 45. We also look to the context: "[Statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶ 46.
B. Interpretation of "Any Person Authorized in Writing by the Patient"
¶ 20. Moya argues that "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is "defined broadly by the legislature" and that the plain meaning of the statutory language requires nothing more than a person and a written authorization from the patient. Thus, Moya's attorney qualifies as a "person authorized in writing by the patient" simply because he is a person and has a written authorization from Moya in the nature of the HIPAA release form. Healthport, on the other hand, argues that the context of § 146.81(5) indicates that the person authorized in writing by the patient must (in addition to having authorization to obtain health care records) also be authorized to make health care decisions on behalf of the patient. In response to this argument, Moya says Healthport can achieve this definition only by adding its own language to the statute.
¶ 21. After examining the language of the statute and applying the well-established rules of statutory interpretation, we agree with Moya. The context *51 of the statutory definition of "person authorized by the patient" provided in § 146.81(5) indicates that "any person authorized in writing by the patient" is a stand-alone category, separate and apart from the remaining categories, containing no limitations beyond those expressly written. We base our determination in this regard on the punctuation and conjunctions given in the statute and see these categories as follows:
(1) "[T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11)";
(2) "the person vested with supervision of the child under s. 938.138 or 938.34 (4d), (4h), (4m), or (4n)";
(3) "the guardian of a patient adjudicated incompetent in this state";
(4) "the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient";
(5) "any person authorized in writing by the patient or";
(6) "a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2), except as limited by the power of attorney for health care instrument."
(7) "If no spouse or domestic partner survives a deceased patient, 'person authorized by the patient' also means an adult member of the deceased patient's immediate family, as defined in s. 632.895(l)(d)."
(8) "A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person *52 authorized by the patient to decide upon the release of the records, if no guardian has been appointed for the patient."
Wis. Stat. § 146.81(5) (emphasis added).
¶ 22. Thus, the phrase "any person authorized in writing by the patient" must be interpreted as its own category of persons authorized by the patient. The statutory language is unambiguous in that it requires only a person with a written authorization from the patient. The plain meaning of the statute does not require that the authorization be an authorization to make health care decisions on behalf of the patient. Thus, when the phrase "person authorized by the patient" is used in Wis. Stat. § 146.83(3f)(b)4.-5. in the context of obtaining copies of health care records, it includes "any person authorized in writing by the patient" to obtain such records. The definition requires no additional authorization for such person to qualify for the exemption from the certification charge and retrieval fee.
f 23. Healthport argues that this conclusion is inconsistent with the general principle that we interpret an item in a list consistently with the remaining items in the list. See State v. Popenhagen, 2008 WI 55, ¶ 46, 309 Wis. 2d 601, 749 N.W.2d 611. From this general principle, Healthport urges us to conclude that "any person authorized in writing by the patient" must have the ability to make health care decisions on the patient's behalf. Healthport's argument runs as follows: Because each of the other categories of persons in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) has the authority to make health care decisions on behalf of the patient, the fifth category listed above must have that authority as well in order to qualify as a "person authorized by the patient."
*53 ¶ 24. This argument is unpersuasive in light of the relevant statutory context. Examining the various categories in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) demonstrates that the legislature did not specify that each must have the authority to make health care decisions for the patient. Instead, the legislature placed varying parameters on each distinct category. For example, in the first category, the legislature chose to limit it to the parent, guardian, or legal custodian of a minor patient. Therefore, a parent, guardian, or legal custodian of a minor is automatically a "person authorized by the patient" wherever that phrase appears in Wis. Stat. §§ 146.81-.84; nothing else is necessary to qualify and no other limitation is imposed. Other categories, however, are narrower. For example, the eighth category is specifically limited to a temporary guardian appointed by a court to "decide upon the release of records" for an incompetent patient. At least for this category, having specific authorization to make health care decisions for the incompetent patient is a requirement.
¶ 25. We cite these instances of circumscription within the statute not as demonstrations of the legislature's collective facility with language but, rather, to bolster our understanding that, when the legislature chooses to say "any person authorized in writing by the patient," we must interpret these words without the kind of limitation proposed by Healthport. Cf. Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc., 2002 WI 51, ¶ 19, 252 Wis. 2d 544, 644 N.W.2d 236. Put simply, had the legislature intended to place parameters of the kind Healthport suggests on a person authorized in writing by the patient, "it would have done so." Id. It did not, and so we do not.[10]
*54 ¶ 26. Healthport argues that interpreting the category "any person authorized in writing by the patient" without the additional requirement that the authorization be for making health care decisions creates chaos and inconsistency throughout the statutory scheme. Without constancy as to what the authorization must be for, Healthport argues that the definition of a "person authorized by the patient" would change each time it is used throughout the statute. However, it is enough to refute this argument to note that, contrary to what Healthport argues, the definition of a "person authorized by the patient" remains constant throughout the statutes governing access to health care records. Instead of creating chaos, permitting the specific nature of the authorization allows for flexibility. In all cases, we simply look to the written authorization to determine what the patient has authorized the person to do.
f 27. Because the definition of "any person authorized in writing by the patient" does not specify what the person must be authorized to do, the written authorization necessary for an attorney to qualify will depend on the function the attorney seeks to perform. In other words, why an attorney might need written authorization may be different in different contexts. For example, to perform the function of a "person authorized by the patient" in some contexts, the attorney might need authorization to make certain deci *55 sions on behalf of the patient. See, e.g., Wis. Stat. § 146.82(1) (informed consent to release records may be given by a "person authorized by the patient"). But in other contexts, the attorney would only need authorization to receive copies of health care records. That is the case in Wis. Stat. § 146.83(3f), the statute governing requests for copies of such records. Regardless of the context, what mattered to the legislature in defining "person authorized by the patient" to include "any person authorized in writing by the patient" is that the person does have written authorization from the patient to perform the relevant function.
f 28. Past iterations of the statute support our conclusion that the plain meaning of "any person authorized in writing by the patient" is exactly what it says. See County of Dane v. LIRC, 2009 WI 9, ¶ 27, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting Richards v. Badger Mut. Ins., 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581) (statutory context includes past iterations of the statute). When the legislature first enacted the statute in 1979, Wis. Stat. § 146.81(5) defined "person authorized by the patient" as
the parent, guardian or legal custodian of a minor patient, as defined in s. 48.02 (9) and (11), the guardian of a patient adjudged incompetent, as defined in s. 880.01 (3) and (4), the personal representative or spouse of a deceased patient or any person authorized in writing by the patient.
In this version of the statute, "any person authorized in writing by the patient," as evidenced by the use of "or," is the last category of persons considered a "person authorized by the patient." We see from our reading of the 1979 statute that "any person authorized in writing by the patient" has always been a *56 distinct category of persons—one without limitation other than a requirement of authorization in writing from the patient.
¶ 29. Nevertheless, Healthport argues that a 2014 amendment to the statutes governing health care records, Wis. Stat. § 146.83(1b), provides context that shows that the legislature intended to exclude attorneys from the definition of a "person authorized by the patient." The 2014 addition of § 146.83(1b) states, "Notwithstanding s. 146.81(5), in this section a 'person authorized by the patient' includes an attorney appointed to represent the patient under s. 977.08[11] if that attorney has written informed consent from the patient to view and obtain copies of the records." According to Healthport, the legislature's use of "[n]ot-withstanding" shows that the legislature, in § 146.83(1b), included a certain type of attorney— public defenders—as a person authorized by the patient to receive health care records in spite of a general exclusion of attorneys from Wis. Stat. § 146.81(5).
¶ 30. While the legislature may have intended to expressly include public defenders, we decline Health-port's implicit invitation to add limiting language to Wis. Stat. § 146.81(5). The legislature, with its use of "any person," chose not to place a limit on who could be authorized in writing by the patient under § 146.81(5), and we give effect to the enacted text. See Bruno v. Milwaukee County, 2003 WI 28, ¶ 14, 260 Wis. 2d 633, 660 N.W.2d 656 (refusing to add additional requirements to the definition of "retirement" because those additional requirements were not mentioned in the text). And more to the point, nothing about the express *57 inclusion of public defenders leads us to conclude the legislature intended to exclude other attorneys.[12]
¶ 31. In sum, Moya's attorney qualifies as a "person authorized by the patient" because he is a person, he has a written authorization from Moya via the HIPAA release form, and Moya, the patient, signed the HIPAA release form to provide her attorney the authorization to receive her health care records. Therefore, as a person authorized by the patient, Moya's attorney is exempt from the certification charges and retrieval fees Healthport imposed under Wis. Stat. § 146.83(3f)(b)4.-5.
C. The Doctrine of Voluntary Payment Does Not Apply
¶ 32. Healthport argues that the doctrine of voluntary payment bars Moya's class action lawsuit and thereby entitles Healthport to summary judgment; however, we conclude that the doctrine of voluntary payment does not apply.
*58 ¶ 33. "The voluntary payment doctrine places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment." Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship, 2002 WI 108, ¶ 13, 255 Wis. 2d 447, 649 N.W.2d 626. "[T]he voluntariness in the doctrine goes to the willingness of a person to pay a bill without protest as to its correctness or legality." Id., ¶ 15.
¶ 34. It is axiomatic that we give effect to the legislature's expressed intent when we interpret statutes. Kalal, 271 Wis. 2d 633, ¶ 44. Here, we determined that the legislature's expressed intent that a person with a written authorization from a patient does not have to pay the certification charge or retrieval fee for obtaining health care records. Thus, "[application of the common law voluntary payment doctrine would undermine the manifest purposes of [Wis. Stat. § 146.83(3f)]." MBS-Certified Pub. Accountants, LLC v. Wis. Bell, Inc., 2012 WI 15, ¶ 4, 338 Wis. 2d 647, 809 N.W.2d 857. Consequently, we cannot apply it in this case to bar Moya's claim.
D. The Doctrine of Waiver Does Not Apply
¶ 35. Healthport also argues that Moya's class action lawsuit is barred by the doctrine of waiver. We disagree.
¶ 36. "Waiver has been defined as a voluntary and intentional relinquishment of a known right." *59 Attoe v. State Farm Mut. Auto. Ins., 36 Wis. 2d 539, 545, 153 N.W.2d 575 (1967). Waiver can be done through conduct. Id.
¶ 37. Healthport argues that Moya waived her ability to obtain her health care records at a lower cost because she chose to authorize her attorney to obtain her health care records instead of requesting them herself, thereby voluntarily and intentionally relinquishing her right not to be charged the certification charge and retrieval fee. As with the application of the doctrine of voluntary payment, we decline to apply the doctrine of waiver to subvert the legislature's intent. To conclude that the doctrine of waiver applies would require us to conclude that Moya's attorney has to pay the certification charge and retrieval fee. However, we conclude that Moya's attorney does not have to pay the certification charge or retrieval fee because he is a "person authorized by the patient." Thus, the doctrine of waiver does not apply to bar Moya's class action lawsuit.
IV. CONCLUSION
¶ 38. Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under those subdivisions.
By the Court.—The decision of the court of appeals is reversed and the case is remanded for proceedings consistent with this opinion.
*60 ¶ 39. REBECCA GRASSL BRADLEY and DANIEL KELLY, JJ., did not participate.

 The Honorable Karen E. Christenson presiding.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 HIPAA stands for Health Insurance Portability and Accountability Act. A HIPAA release form is a type of form *43 wherein a patient consents to the release of his or her health care information to a third party.

 Moya's personal injury claim arose from a car accident in 2011 from which she sustained injuries. This claim has since been settled.

 Atty. Welcenbach submitted his request to Moya's health care provider, Aurora Healthcare, Inc. ("Aurora"), but Aurora and Healthport have an agreement whereby Healthport handles Aurora's health care records requests.

 The total deducted from Moya's settlement proceeds for these costs was $294.70.
Contrary to the assertion made by the dissent, the fact that Atty. Welcenbach passed these costs along to Moya was not a factor in arriving at our conclusion that Atty. Welcenbach is a person authorized by the patient for purposes of Wis. Stat. *47 § 146.83(3f)(b)4.-5. See dissent, ¶ 62 n.3. Our determination that Atty. Welcenbach is a person so authorized is derived from our application of the plain language of the statute and nothing more.

 The Honorable William W. Brash III presiding.

 The Honorable Karen E. Christenson presiding.

 The Honorable Pedro A. Colon presiding.

 According to the dissent, such an interpretation is one *54 done in a vacuum, not taking into account the context in which the words are written. E.g., dissent, ¶ 41. However, interpreting the text to also contain the words "to consent to the release of the patient's health care records" ignores the immediate context of the text we are asked to interpret here because it does not take into account the distinction between "any person authorized in writing by the patient" and the other categories of persons used in the statute.

 Wisconsin Stat. § 977.08 relates to the appointment of a state public defender.

 Healthport has failed to establish that the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion another) applies here because nothing indicates that the legislature considered attorneys other than public defenders when enacting the language of Wis. Stat. § 146.83(1b). See Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶ 17 n.11, 270 Wis. 2d 318, 677 N.W.2d 612 ("This rule may be applied only where there is some evidence that the legislature intended it to apply.").
The dissent also seems to be looking for "attorneys" to be expressly and specifically listed persons authorized by the patient. See, e.g., dissent, ¶ 42. However, if we are to look for such narrow categories, who then would qualify? The answer is no one because no category of persons is so specifically listed in the statute.