Carolyn MOYA, Plaintiff-Respondent,†

v.

AURORA HEALTHCARE, INC. and Healthport
Technologies, LLC, Defendants-Appellants.

Court of Appeals

*No. 2014AP2236. Submitted on briefs September 8,
2015.—Decided December 1, 2015.*

## 2016 WI App 5

(Also reported in 874 N.W.2d 336.)

† Petition for Review filed.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Beth Ermatinger Hanan* and *John Franke* of *Gass Weber Mullins LLC*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert J. Welcenbach* and *Jeanne E. Bell* of *Welcenbach Law Offices, S.C.*, Milwaukee.

Before Kessler and Brennan, JJ., and Daniel L. LaRocque, Reserve Judge.

¶ 1. LaROCQUE, J. Aurora Healthcare, Inc. and HealthPort Technologies, LLC (collectively "Health-

Port" except as needed) appeal from non-final orders denying HealthPort's motion for summary judgment and denying its motion for reconsideration.[1] This case involves the construction and interpretation of WIS. STAT. §§ 146.81–146.83 (2013–14)[2] to determine whether personal injury attorneys are exempt from the $8 certification and $20 retrieval fees under the health-records-fee statute, § 146.83(3f), when an attorney orders a client's health care records with the client's written permission. HealthPort claims the circuit court erred when it construed § 146.83(3f)'s "person authorized by the patient" language to include a personal injury attorney whose client signed a written HIPAA authorization giving permission to get the client's medical records. HealthPort argues that the plain language of the statute, the context of the statute, and a recent amendment to the statute support its position that "person authorized by the patient" does not include a personal injury attorney whose client has signed a written form allowing the attorney to gather the client's medical records. Because "person authorized by the patient," as that term is defined by § 146.81(5) and used in § 146.83 does not include Moya's attorney, we reverse the circuit court's orders and remand with directions to grant HealthPort's motions and dismiss Moya's complaint.[3]

---

[1] We granted HealthPort's petition for leave to appeal from the non-final orders in an order dated December 16, 2014.

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[3] HealthPort also argues: (1) the voluntary payment doctrine defeats Moya's claims; (2) Moya waived the right to exemption of the retrieval and certification fees; and (3) the circuit court applied the wrong standard on the reconsideration motion. Based on our disposition, it is not necessary for us to address the other issues HealthPort raised. *See Gross v.*

## BACKGROUND

¶ 2. In April 2011, Moya was involved in a motor vehicle accident. She hired Welcenbach Law Offices, S.C. to handle her personal injury lawsuit. Attorney Robert Welcenbach had Moya sign HIPAA forms authorizing the release of her medical records to Welcenbach Law Offices. Welcenbach sent a request for the records to Aurora, who had a contract with HealthPort to fulfill the records request. HealthPort sent certified copies of Moya's medical records to Welcenbach along with invoices listing the charges, including a $20 retrieval fee and $8 certification fee. The invoices were all paid by Welcenbach Law Offices.

¶ 3. In March 2013, Moya filed a class action complaint alleging HealthPort violated Wis. Stat. § 146.83(3f) by charging her attorney the retrieval and certification fees. She argued that her attorney was a "person authorized by the patient" and therefore exempt from having to pay retrieval or certification fees. HealthPort filed a motion to dismiss the complaint, which was denied by the circuit court.

¶ 4. After discovery, HealthPort filed a motion for summary judgment asserting that the proper interpretation of Wis. Stat. §§ 146.81–146.83 clearly shows that Moya's attorney was not a "person authorized by the patient" because that term means a person who the patient has given the power to consent to *release* of her health care records to others. A client's signed HIPAA authorization only gives a personal injury attorney the

*Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

right to *obtain and view* health care records, but not the right to have health care providers *release* those records to others. The circuit court denied HealthPort's motion, ruling that "person authorized by the patient" had different degrees of meaning. It held that the phrase meant authority "to consent to the release of records" under § 146.81(5), but under § 146.83, the phrase meant anyone who the patient gives "the authority to inspect the patient's health care records."

¶ 5. HealthPort subsequently filed a motion for reconsideration arguing that the recent amendment to Wis. Stat. § 146.83, adding subsection (1b), demonstrated that the circuit court's earlier interpretation of the statute was incorrect. Subsection (1b) made State Public Defenders a "person authorized by the patient" when the attorney has written informed consent:

> **(1b)** Notwithstanding s. 146.81 (5), in this section, a "person authorized by the patient" includes an attorney appointed to represent the patient under s. 977.08 if that attorney has written informed consent from the patient to view and obtain copies of the records.

Wis. Stat. § 146.83(1b). The circuit court denied the motion for reconsideration. HealthPort filed a petition to appeal from non-final orders, which we granted.

## ANALYSIS

¶ 6. Our review on summary judgment decisions is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Here, the summary judgment involved the construction and interpretation of statutes, which presents legal issues we also review independently of the circuit court. *See Mayo v. Boyd*, 2014 WI App 37, ¶ 8, 353 Wis. 2d 162, 844 N.W.2d 652. The purpose of statutory interpreta-

tion is to determine the intent of the legislature. *Id.* To do so, we start with the plain language of the statute and examine that language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 7. The statutes requiring our interpretation are Wis. Stat. §§ 146.81–146.83. Wisconsin Stat. § 146.81 defines words and phrases used in §§ 146.81–146.84. Subsection (5) defines " '[p]erson authorized by the patient' " as:

> the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1) (d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.

¶ 8. WISCONSIN STAT. § 146.82 addresses the confidentiality of health care records. Subsection (1) provides in pertinent part: "All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient." Subsection (2) lists the circumstances in which patient health care records can be accessed without informed consent—none of which apply here. *See* § 146.82(2).

¶ 9. WISCONSIN STAT. § 146.83 addresses access to patient health care records and fees that can be charged for the records. The two pertinent subsections include (1b), which the legislature recently added to the statute. *See* 2013 Wis. Act 342 (April 23, 2014). Subsection (1b) provides: "Notwithstanding s. 146.81 (5), in this section, a 'person authorized by the patient' includes an attorney appointed to represent the patient under s. 977.08 if that attorney has written informed consent from the patient to view and obtain copies of the records." Subsections (3f)(a) & (b) require a health care provider to comply with proper requests and set forth the fees that can be charged for copies of medical records:

> **(3f)** (a) Except as provided in sub. (1f) or s. 51.30 or 146.82 (2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records.

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

¶ 10. The issue on appeal is how to interpret "person authorized by the patient." Moya argues this phrase includes her attorney because as the "patient," she "authorized" Welcenbach to get her medical records by signing the HIPAA releases. HealthPort seeks a different interpretation by looking at the phrase within the context of the statute and because of the recent addition of WIS. STAT. § 146.83(1b).

¶ 11. We start first with the plain language of the statute. *State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 46. WISCONSIN STAT. § 146.81(5) specifically defines "person authorized by the patient." The statute defines the phrase by listing the individuals who qualify as a "person authorized by the patient":

(1) The parent, guardian, or legal custodian of a minor patient;

(2) The person vested with supervision of a child;

(3) The guardian of a patient adjudicated incompetent in this state;

(4) The personal representative, spouse, or domestic partner of a deceased patient;

(5) Any person authorized in writing by the patient or a health care agent designated by the patient as a principal if the patient is incapacitated, except as limited by the power of attorney for health care.

(6) An adult member of a deceased patient's immediate family if there is no spouse or domestic partner; and

(7) A guardian appointed by the court where a patient is "incompetent to consent to the release of records." This appointee is then "the person authorized by the patient to decide upon the release of records."

This list does not include personal injury attorneys whose clients have signed a HIPAA form. If the legislature intended to include attorneys who obtain clients' medical records in civil litigation, it certainly could have added attorneys to the list set forth in WIS. STAT. § 146.81(5). It did not. The legislature specifically defined the phrase "person authorized by the patient" and we are required to apply that definition as written. *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶ 45.

¶ 12. Moya argues her attorney falls under (5) above because she authorized her attorney "in writing" to get her medical records. But Moya's argument removes this part of the sentence and looks at it in isolation and out of the context from the rest of the sentence and statute. These statutes govern the use, disclosure, confidentiality, and release of protected health care information. WISCONSIN STAT. § 146.81(5) specifically defines those persons who may, instead of the patient, make the decision to authorize a health

550

care provider to release confidential patient records. The legislature crafted a very specific list of individuals who fall into this group. Each individual listed by the legislature is a person who has the power derived from the patient (or the court) to make a decision about and request a health care provider release the patient's confidential records. Moya's attempt to extract the phrase "any person authorized in writing by the patient" from the context of § 146.81(5) and read it in isolation in order to give her attorney the power over the release of Moya's health care records runs contrary to the plain and contextual meaning of the language used by the legislature in crafting these statutes. *See Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶ 12, 293 Wis. 2d 123, 717 N.W.2d 258 (proper statutory interpretation requires more than taking " 'a single, isolated sentence or portion of a sentence' "—we must examine the entire statute in context; citation omitted); *see also Schinner v. Schinner*, 143 Wis. 2d 81, 91–94, 420 N.W.2d 381 (Ct. App. 1988) (proper statutory interpretation requires "that all statutes under consideration will be operative").

¶ 13. This analysis holds true in examining the specific definition set forth in Wis. Stat. § 146.81(5) when applying it to the fees statute itself, Wis. Stat. § 146.83(3f). The first thing § 146.81 says is that the definitions set forth in § 146.81 should be used in "ss. 146.81 to 146.84." *See* § 146.81. Thus, "person authorized by the patient" has to have the same meaning each time it is used throughout these statutes. The circuit court's conclusion that this phrase means what HealthPort argues it means in the definition section, but what Moya argues it means in the fees section violates basic rules of statutory construction and would result in an unreasonable and absurd interpre-

551

tation. We must apply the definition of "person authorized by the patient" that the legislature specifically set forth in § 146.81(5) to § 146.83(3f) because the legislature clearly stated that this definition applies to § 146.83(3f). Accordingly, "person authorized by the patient" as used in § 146.83(3f)4. and 5. means the same as it does in § 146.81(5): a person who has been authorized to consent to the release of a patient's health care records in place of the patient. This definition does not include Moya's attorney because it does not include attorneys who only have a HIPAA release from their client. A HIPAA release allows an attorney to obtain a copy of a client's medical records, but it does not give that attorney the power to consent to the release of Moya's confidential health care records. In other words, Moya gave her attorney the authority to get copies of her health care records, but she did not give her attorney authority to act on her behalf beyond that. The plain language and context of the definition of "person authorized by the patient" clearly shows that the legislature's intent was to protect the confidentiality of a patient's health care records, *see* Wis. Stat. § 146.82, and restrict the power to release health care records.

¶ 14. Our interpretation is further supported by the recent addition to Wis. Stat. § 146.83—subsection (1b). This subsection specifically added State Public Defender attorneys to the list of individuals who are a "person authorized by the patient" as long as the attorney gets written informed consent from the client. The legislature enacted this subsection with introductory language stating "Notwithstanding s. 146.81(5)." There is only one way to interpret the plain language of this subsection: Wis. Stat. § 146.81(5) does not include attorneys as a "person authorized by the pa-

tient." In other words, § 146.81(5) *did not originally include attorneys who have a signed HIPAA release from their client as a person authorized by the patient.* Notwithstanding the fact that attorneys with HIPAA releases do not qualify as a "person authorized by the patient," the legislature decided that State Public Defenders *should* be included, and therefore created § 146.83(1b) to do so—thereby exempting State Public Defenders from the certification and retrieval fees found in subsection § 146.83(3f). Moya argues that the State Public Defenders already were a "person authorized by the patient," and the amendment was necessary because companies like HealthPort refused to recognize this fact. If Moya's argument were correct, the legislature would not have used the "Notwithstanding s. 146.81(5)" language. Instead, the legislature would have amended the definition in § 146.81(5) to specifically include attorneys in the definitional list of "person authorized by the patient."

¶ 15. Moya also argues that her attorney should not have to pay the certification and retrieval fees simply because they ordered her medical records instead of having her do it herself. She points out that these records were ordered on her behalf at her request and although Welcenbach paid the HealthPort invoices, ultimately she was charged for the costs of her medical records. It is not this court's job to decide whether the legislature should also exempt personal injury attorneys from paying certification and retrieval fees. It is our job to apply the plain language of the statute within the context of the statutory scheme. *See La Crosse Lutheran Hosp. v. La Crosse Cty.*, 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986) ("If a statute fails to cover a particular situation, and the omission should be cured, the remedy lies with the

legislature, not the courts."). Our analysis of the plain language as specifically defined in WIS. STAT. § 146.81(5) and as applied in context to WIS. STAT. § 146.83(3f) unambiguously and clearly demonstrates that Moya's attorney is not a "person authorized by the patient." The HIPAA form Moya signed gave her attorney the right to obtain and review her records, but it does not make her attorney a person authorized to decide and control whether health care providers should release her confidential medical records to others.

¶ 16. Our review of the relevant statutes establishes that attorneys are not delineated in the list of individuals set forth in the definition of "person authorized by the patient" in WIS. STAT. § 146.81(5), the context of the statutory scheme indicates that "authorized" means having the power to consent to the release of the patient's records, and the recent amendment to WIS. STAT. § 146.83 adding subsection (1b) clearly shows attorneys do not fall under the definition of "person authorized by the patient." Accordingly, we conclude the circuit court misinterpreted the statute when it determined that Moya's signed HIPAA release made Moya's attorney a "person authorized by the patient" as that term is used in these statutes. We reverse the orders and remand with directions to grant HealthPort's motion for summary judgment.

*By the Court.*—Orders reversed and cause remanded with directions.

¶ 17 KESSLER, J. (*dissenting*). I conclude that the Majority improperly ignores the plain language of WIS. STAT. §§ 146.81–146.83 and usurps the legislature's power by ignoring the plain language chosen by the legislature in § 146.81(5) and by adding exclusions

that the legislature did not create in the statutes' definitions. The Majority uses a word in § 146.83 to create an exclusion in § 146.81(5) that the legislature did not impose. The effect of this leap of logic is a drastic limitation on the right of a competent adult patient to give informed consent to "any person" of the patient's choosing (here, the patient's attorney) to obtain copies of the patient's health care records at a statutorily-provided reduced cost to the patient. Consequently, I dissent.

¶ 18. The rules for statutory construction are well-established. Those rules are summarized by our supreme court in *Kalal*:

> [S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.
>
> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect *to every word,* in order to avoid surplusage . . . . In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute.

*Id.*, 271 Wis. 2d 633, ¶¶ 45–46 (emphasis added; citations and quotation marks omitted).

555

¶ 19. I begin with the plain language of Wis. Stat. § 146.81(5), in which " '[p]erson authorized by the patient' " is categorized accordingly:

- the parent, guardian, or legal custodian of a minor patient, as defined in Wis. Stat. §§ 48.02(8) and (11);
- the person vested with supervision of the child under Wis. Stat. §§ 938.183 or 938.34(4d), (4h), (4m), or (4n);
- the guardian of a patient adjudicated incompetent in this state;
- the personal representative, spouse, or domestic partner under Wis. Stat. ch. 770 of a deceased patient;
- *"any person authorized in writing by the patient"*; or
- additional alternatives when the patient is deceased and has no spouse or domestic partner, or the patient is believed to be incompetent but without a guardian.

(Emphasis added.) There are six categories of individuals who may be a "person authorized by the patient" to obtain confidential health records pertaining to the patient. The persons identified in § 146.81(5) fall into categories based either on clearly defined legal relationships to the patient or on the patient's personal choice. The persons with legal relationships include: (a) persons with legal authority to act on behalf of a minor (parent, guardian, legal custodian); (b) persons supervising a minor as a result of delinquency or criminal proceedings in accordance with certain statutes; and (c) persons to whom a court has given authority to act on behalf of the patient (guardian of an incompetent patient, personal representative of deceased patient).

The patient's choice of a person to obtain the confidential records is recognized by acknowledging that (a) "any person authorized in writing by the patient" or (b) the spouse or domestic partner of a deceased patient may give consent to get these records. The legislature's language is clear and unambiguous. We need go no further to properly affirm the circuit court.

¶ 20. The Majority uses an addition to WIS. STAT. § 148.83(1b), the fee structure section of the medical records access scheme, to engraft limitations on the unambiguous inclusion in WIS. STAT. § 146.81(5) of "any person authorized in writing by the patient." To explain the mistake in that reasoning, I examine the context of §§ 146.81–146.83.

¶ 21. WISCONSIN STAT. § 146.81[1] defines the terms used in the subsequent sections. As discussed above, § 146.81(5) defines a " '[p]erson authorized by the patient' " for purposes of obtaining healthcare records to specifically include "any person authorized in writing by the patient."

¶ 22. WISCONSIN STAT. § 146.82 identifies persons and entities to whom health care records may be disclosed *without informed consent* from the patient. These provisions essentially allow sharing records within a health care provider entity, with health insurance payers and with certain government agencies for certain purposes. The section permits health care providers to respond to government reporting requirements, court orders and similar mandated disclosures.

---

[1] WISCONSIN STAT. § 146.81(1) contains a long list of health care providers to which these provisions apply. Section 146.81(4) defines health care records. Section 146.81(2) describes certain information which must be contained in an informed written consent.

¶ 23. WISCONSIN STAT. § 146.83 establishes how much the entity providing the records may charge the person requesting copies of the records. The charges vary to some degree depending on the requesting entity. Section 146.83(3f) lists the charges the entity providing the records may require from the person or entity requesting the records:

(a) Except as provided in sub. (1f)[2] or s. 51.30[3] or 146.82 (2)[4], if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records.

(b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

---

[2] WISCONSIN STAT. § 146.83(1f) reduces the charges if the records are for social security benefits or medical assistance purposes.

[3] Exceptions to the scheduled charges, provided by reference to WIS. STAT. § 51.30, apply to records of a person committed because of mental illness.

[4] Reductions or exemptions under WIS. STAT. § 146.82(2) apply when disclosure is to entities and institutions permitted to obtain records *without informed consent.*

4. *If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.*

5. *If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.*

6. Actual shipping costs and any applicable taxes.

(Emphasis added.) Here, there is no dispute that the patient signed a written consent that complied with statutory requirements, and authorized her attorney to obtain the records identified on the consent. The plain language of Wis. Stat. § 146.83(3f)(b)4. and 5. allows a certification fee of $8.00 and a retrieval fee of $20.00 *only* if the requester is *neither* the patient *nor* a " '[p]erson authorized by the patient' " to obtain the records. Conversely stated, if the requester *is* the patient, or *is* a " '[p]erson authorized by the patient,' " these fees may *not* be charged. The Majority's conclusion to the contrary violates the rules of statutory construction established by our supreme court in *Kalal* and its related decisions.

¶ 24. To exclude a privately retained attorney from the Wis. Stat. § 146.81(5) definitions, the Majority relies on an amendment to Wis. Stat. § 146.83 which states:

> **(1b)** Notwithstanding s. 146.81(5),[5] in this section, a "person authorized by the patient" includes an attorney appointed to represent the patient under s. 977.08 if that attorney has written informed consent from the patient to view and obtain copies of the records.

---

[5] As we have seen, Wis. Stat. § 146.81(5) specifically permits a living adult patient to give written consent to "any person" the patient chooses to obtain the patient's medical records.

¶ 25. WISCONSIN STAT. ch. 977 describes the office and duties of the State Public Defender. WISCONSIN STAT. § 977.08 describes the State Public Defender's appointment of either an employee attorney or outside counsel for criminal defendants who qualify for SPD services. WISCONSIN STAT. § 146.83(1b) adds these appointed attorneys to those who, *with written informed consent,* are entitled to obtain health care records involving a patient who would necessarily also be the attorney's client. This right to obtain records is "[n]otwithstanding" the fact that these attorneys are not specifically mentioned in WIS. STAT. § 146.81(5). Had the legislature intended by this amendment to limit access to client health care records *only* to attorneys employed or appointed by the State Public Defender, the legislature could easily have said so by amendment to § 146.81(5), or by specific language in § 146.83. It did neither.

¶ 26. The Majority attempts to justify its conclusion that the legislature meant what it did *not* say by making inferences based on what was *not* said. The introductory language of WIS. STAT. § 146.83(1b), "Notwithstanding s. 146.81(5)," is the basis of the Majority's inference that because the State Public Defender is not mentioned in § 146.81(5), the legislature really meant that "*any* person authorized by the patient" in § 146.81(5) actually means only persons specifically described. (Emphasis added.) The Majority claims that "[n]otwithstanding" means attorneys were not included in "any person authorized by the patient." *See* Majority, ¶ 14.

¶ 27. The Majority also opines that if the legislature meant to allow attorneys to obtain informed consent from their clients to get medical records, then the legislature would have amended WIS. STAT. § 146.81(5) instead. *See* Majority, ¶ 14. The analysis

makes sense only if the Majority also concludes that the legislature did not understand the plain meaning of "any person" when it used that phrase years ago in § 146.81(5). "Any," an adjective, is "used to indicate one selected without restriction."[6] The other alternatives identified in § 146.81(5) were necessary to accommodate the situation of a patient being a minor, incompetent, or dead. The legislature, by also authorizing "*any* person authorized in writing by the patient" affirmatively chose to place *no* restrictions on the choice by a living competent adult or an agent to obtain his/her health care records.

¶ 28. The Majority's conclusion here—that a private attorney with written informed consent from the patient is *not* a " '[p]erson authorized by the patient' " —ignores the plain language of Wis. Stat. § 146.81(5), which in no way limits the adult patient's choice of "any person" to obtain copies of his/her health care records. Moreover, Wis. Stat. § 146.83(1b), by the reference to Wis. Stat. § 977.08, allows a patient with appointed counsel to benefit from the savings provided by § 146.83(1b), while denying those cost savings to a patient with a privately retained counsel. Such a distinction has no support in the plain language of §§ 146.81–146.83, nor in logic, and possibly not even in the Wisconsin Constitution.

¶ 29. It is not the role of this court to add additional conditions to the plain language of a statute the legislature has enacted, nor may we ignore plain language the legislature has chosen. For all the foregoing reasons, I would affirm the circuit court.

[6] *See* http://www.merriam-webster.com/dictionary/any (last visited Nov. 17, 2015).