# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:         2019AP2423

† Petition for Review filed

Complete Title of Case:

**DERRICK J. HAMMETTER AND ANTOINETTE M. VINKAVICH,**

**PLAINTIFFS-RESPONDENTS,**

**V.**

**VERISMA SYSTEMS, INC.,**

**DEFENDANT-APPELLANT,†**

**FROEDTERT MEMORIAL LUTHERAN HOSPITAL, INC.,**

**DEFENDANT-CO-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | July 7, 2021 |
| Submitted on Briefs: | January 14, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *David J. Hanus, Alyssa A. Johnson, and Andrew P. Trevino* of *Hinshaw & Culbertson LLP,* Milwaukee. |
| Co-Appellant ATTORNEYS: | On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Susan E. Lovern, Kelly J. Noyes, Nicholas D. Castronovo,* |

*and Christopher E. Avallone* of *von Briesen & Roper, S.C.,* Milwaukee.

Respondent ATTORNEYS:  On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brett A. Eckstein, Edward E. Robinson, and Allan M. Foeckler* of *Cannon & Dunphy, S.C.,* Brookfield.

2021 WI App 53

COURT OF APPEALS
DECISION
DATED AND FILED

**July 30, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2423**

**STATE OF WISCONSIN**

Cir. Ct. No. **2017CV768**

**IN COURT OF APPEALS**

---

**DERRICK J. HAMMETTER AND ANTOINETTE M. VINKAVICH,**

    **PLAINTIFFS-RESPONDENTS,**

  **V.**

**VERISMA SYSTEMS, INC.,**

    **DEFENDANT-APPELLANT,**

**FROEDTERT MEMORIAL LUTHERAN HOSPITAL, INC.,**

    **DEFENDANT-CO-APPELLANT.**

---

APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1 GUNDRUM, J. Verisma Systems, Inc., and Froedtert Memorial Lutheran Hospital, Inc., appeal from an order of the circuit court certifying a class. The primary issue before us is whether the court erroneously exercised its discretion in certifying the class as it did. We consider and reject all of Verisma's and Froedtert's challenges to the certification, including those related to the findings necessary for certification, notice to potential class members, certification of common law claims, the statutory limitations period, and the voluntary payment doctrine. We conclude the court did not err.

## *Background*

¶2 Derrick J. Hammetter and Antoinette M. Vinkavich each retained the Cannon & Dunphy law firm (Cannon) to represent him/her in separate personal injury actions. Related to such representation, each signed an authorization that allowed Cannon to secure release of his/her health care records. Cannon requested the records from Froedtert, and as the vendor responsible for releasing information on behalf of Froedtert, Verisma billed Cannon for costs related to the records release, including an $8 certification charge and $20 retrieval fee (collectively, $28 fee) charged pursuant to WIS. STAT. § 146.83(3f)(b)4.-5. (2019-20).[1] Cannon paid this fee and was later reimbursed by Hammetter and Vinkavich pursuant to a retainer agreement each had with Cannon requiring such repayment from any recovery.

¶3 WISCONSIN STAT. § 146.83(3f)(b)4.-5. respectively authorize health care providers to charge the $8 certification charge and $20 retrieval fee *if* the requestor of the records "is not the patient or a person authorized by the patient." On December 1, 2015, we decided *Moya v. Aurora Healthcare, Inc.*, 2016 WI App

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

5, 366 Wis. 2d 541, 874 N.W.2d 336 (2015) (***Moya I***). In that case, we interpreted WIS. STAT. § 146.83(3f)(b)4.-5. as *not* exempting from the $28 fee an attorney with a written authorization from a patient who requested records on behalf of the patient. ***Moya I***, 366 Wis. 2d 541, ¶¶1, 11-12.

¶4 A year and one-half later, the supreme court reversed this decision and held that "any person," including an attorney, with a written authorization from a patient who requests records on behalf of a patient *is* exempt from this $28 fee. ***Moya v. Aurora Healthcare, Inc.***, 2017 WI 45, ¶¶2, 21-22, 31, 375 Wis. 2d 38, 894 N.W.2d 405 (***Moya II***). Interpreting the "a person authorized by the patient" language of subdivisions 4. and 5., which the ***Moya II*** court observed was further statutorily defined to include "any person authorized in writing by the patient," *see* WIS. STAT. § 146.81(5), the court held that these phrases "require[] only a person with a written authorization from the patient." ***Moya II***, 375 Wis. 2d 38, ¶¶6, 22. The court added that "no additional authorization [is required] for [a 'person authorized in writing by the patient'] to qualify for the exemption from the certification charge and retrieval fee," ***id.***, ¶22, and "[t]he legislature, with its use of 'any person,' chose not to place a limit on who could be authorized in writing by the patient under § 146.81(5)," ***id.***, ¶30. Thus, the ***Moya II*** court held that not only does an attorney with a written authorization from a patient qualify as "a person authorized by the patient" for purposes of being exempt from the $28 fee, but that "any person" with a written authorization from a patient qualifies and is exempt. *See **id.***

¶5 Following the release of the ***Moya II*** decision, Hammetter and Vinkavich filed this suit against Verisma claiming a violation of WIS. STAT. § 146.83(3f), unjust enrichment, and conversion and seeking compensatory and punitive damages "on their own behalf and on behalf of the members of a proposed

3

class of individuals and entities that are similarly situated." Hammetter and Vinkavich later filed a second amended complaint, adding Froedtert as a defendant and specifically asserting that Froedtert "is vicariously liable for the acts of its authorized agent, Verisma." Hammetter and Vinkavich subsequently moved for class certification, but only against Verisma "as the release of information agent of Froedtert … for thousands of violations of … § 146.83."

¶6 Following extensive argument and briefing by the parties, including Froedtert, the circuit court granted the motion for class certification, defining the class as follows:

> Any person or entity who:
>
> 1. Either
>
>    a. Requested his or her own patient health care provider records, or authorized another in writing to obtain his or her own health care provider records, from a health care provider in the State of Wisconsin; or
>
>    b. Was authorized in writing by the patient to request and obtain the patient's health care provider records from a health care provider in the State of Wisconsin; and
>
> 2. Was charged by Verisma, either directly or indirectly, a certification and/or retrieval fee at any time between July 1, 2011 and the date of trial; and
>
> 3. Incurred and ultimately paid the certification and/or retrieval charges.

(Emphasis omitted.) Verisma and Froedtert appeal.

## *Discussion*

### *Class Certification Findings*

¶7 The certification of a class action is governed by WIS. STAT. § 803.08.[2] To certify a class action, a circuit court must first find all of the following:

> (a) The class is so numerous that joinder of all members is impracticable.
>
> (b) There are questions of law or fact common to the class.
>
> (c) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
>
> (d) The representative parties will fairly and adequately protect the interests of the class.

Sec. 803.08(1)(a)-(d). The first three findings are "referred to as numerosity, commonality, and typicality." ***Harwood v. Wheaton Franciscan Servs., Inc.***, 2019 WI App 53, ¶23, 388 Wis. 2d 546, 933 N.W.2d 654.

¶8 As relevant to this case, to certify the class the circuit court also needed to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* WIS. STAT. § 803.08(2)(c). These two findings are referred to as "the predominancy and superiority requirements." ***Harwood***, 388 Wis. 2d 546, ¶24.

---

[2] This statute was revised during the pendency of this case. Since all parties agree that the revised version should govern this matter, we consider that version.

5

¶9    Ultimately, the circuit court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate," and we will only reverse the certification decision if the court erroneously exercised its discretion. *Harwood*, 388 Wis. 2d 546, ¶¶5, 41. The court properly exercises its discretion "when it considers the facts of record and reasons its way to a rational, legally sound conclusion." *Id.*, ¶41. The circuit court here properly exercised its discretion.

Numerosity

¶10    In this case, neither Verisma nor Froedtert dispute that the numerosity requirement is met. Nor could they successfully do so. In *Harwood* we determined that for purposes of satisfying the numerosity requirement, forty-two identified class members was sufficient. *Id.*, ¶55. In this case, there appear to be thousands.

Commonality

¶11    As to the commonality requirement, here, all of the members of the proposed class allegedly suffered the same injury—that pursuant to WIS. STAT. § 146.83(3f)(b)4.-5., they were wrongfully charged the $8 certification charge and/or the $20 retrieval fee. The answer to whether Verisma wrongfully charged either fee will resolve the underlying liability issue for each class member. Thus, there are common issues of law and fact as this matter is governed by the same statutory provisions and proof of unlawful charging of these fees will be very similar for each member of the class.

¶12    Verisma and Froedtert contend that the commonality requirement is not met because some in the class may be entitled to up to $25,000 in exemplary damages while others may be entitled to up to $1000 in exemplary damages, depending on whether Verisma wrongfully charged the fees in a knowing and

willful manner or negligently.[3]  Specifically, they posit that Verisma's mental state may have differed depending on whether Verisma charged the fees to a requestor before our decision in *Moya I*, after *Moya I* but before the supreme court's decision in *Moya II*, or after *Moya II* and/or whether the requestor was a patient seeking his/her own medical records or a third-party requestor seeking a patient's records (with an authorization from the patient) "in an antagonistic posture"—such as "defense law firms, insurance companies, employers."

¶13     As Hammetter and Vinkavich point out, however, Froedtert and Verisma point to no evidence indicating Verisma actually had a different mental state dependent on when the records were requested or the nature of the person who made the request.  Speculation related to issues to be addressed later in the "merits" phase of a class-action lawsuit will not suffice to defeat certification of a class.[4] Furthermore, the potential need for individual damage determinations later in the litigation "does not itself justify the denial of certification." *Mullins v. Direct Digit.,*

---

[3] WISCONSIN STAT. § 146.84(1) provides in relevant part:

> (b) Any person ... who violates [WIS. STAT. §§] 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.

> (bm) Any person ... who negligently violates [§§] 146.82 or 146.83 shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees.

[4] While we make no ruling related to this specific point, we do observe that at any time after the legislature enacted the statute at issue and before we released the *Moya I* decision, *see Moya v. Aurora Healthcare, Inc.*, 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336 (2015) (*Moya I*), Verisma itself could have sought a declaratory judgment to clarify the circumstances under which it could or could not lawfully charge the $8 certification charge and/or $20 retrieval fee.

*LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("It has long been recognized that the need for individual damage determinations at [the damages] stage of the litigation does not itself justify the denial of certification.").

¶14     Verisma also contends that the language of the class definition requiring a class member to have "incurred and ultimately paid the certification and/or retrieval charges" is "overbroad and insufficient" because "not only [the] patient[] but also the person authorized to request medical records, i.e., the requestor," are members of the class. Verisma claims, as an example, that the class-certification language approved by the circuit court in this case would allow for not only Hammetter and Vinkavich to be members of the class but also for their law firm, Cannon, to be a member because Cannon initially "paid the certification or retrieval charges on behalf of Hammetter and Vinkavich."

¶15     By adding the requirement that a class member will have to have actually "[i]ncurred and *ultimately paid* the certification and/or retrieval charges," (emphasis added) the circuit court appropriately addressed any overbreadth concern. If a person did not "ultimately pa[y]" the fee, he or she will not be a member of the class (nor would he or she even have suffered damage necessary to maintain an individual claim). The "ultimately paid" language would specifically *prevent* Cannon from being a class member because, as Verisma acknowledges, "Hammetter and Vinkavich paid the certification or retrieval charges out of their settlement and reimbursed Cannon based on their fee agreement." *See Cruz v. All Saints Healthcare Sys., Inc.*, 2001 WI App 67, ¶14, 242 Wis. 2d 432, 625 N.W.2d 344 ("[T]he relevant fact is the incurring of the debt, not the payment. Although in most cases, attorneys advance the expenses for medical records, it is the client who *ultimately pays* the final cost by virtue of subtracting these expenses from the settlement or verdict." (emphasis added)). Indeed, this class certification language

appears to be carefully and appropriately tailored to weed out persons or entities, like Cannon, that may have simply "fronted" the money but did not ultimately pay the debt.[5] With this limiting language, no one should end up included as a class member if he/she/it did not "ultimately pa[y]" the $8 certification charge and/or $20 retrieval fee.

Typicality

¶16 Hammetter's and Vinkavich's claims are certainly typical of the claims of the class. Tracking the circuit court's certification language, Hammetter and Vinkavich each (1) "authorized another [Cannon] in writing to obtain his or her own health care provider records, from a health care provider in the State of Wisconsin"; (2) "[w]as charged by Verisma, either directly or indirectly, a certification and/or retrieval fee at any time between July 1, 2011 and the date of trial"; and (3) "[i]ncurred and ultimately paid the certification and/or retrieval charges." As the circuit court noted,

> Each member of the class will have individually, or through authorized persons requested the health care records of the patient, and will have been charged the retrieval and certification fees. Each of the 40-60,000 potential claims would be a close image of the representative claims; the

---

[5] Verisma makes the claim that Hammetter and Vinkavich suffered no "injury" because the $28 fee was deducted from the settlement proceeds from their personal injury cases. Not surprisingly, Verisma fails to support this outlandish claim with citation to any legal authority. Because this claim is undeveloped and unsupported by legal authority, we need not spill any more ink on it. *See W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 634, 460 N.W.2d 787 (Ct. App. 1990) (we do not consider arguments unsupported by legal authority); *M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (We need not consider arguments which are "unexplained and undeveloped."). That said, we observe that Hammetter and Vinkavich each obviously would have been $28 "wealthier" if Verisma did not impose this fee. Moreover, as indicated above, we have already recognized in prior binding precedent—using the same "ultimately paid" language used in the certification order here—that in such a circumstance "it is the client who *ultimately pays* the final cost by virtue of subtracting these expenses from the settlement or verdict." *See Cruz v. All Saints Healthcare Sys., Inc.*, 2001 WI App 67, ¶14, 242 Wis. 2d 432, 625 N.W.2d 344 (emphasis added).

defenses to the representative claims are close to if not identical to those asserted against the class members. The conduct giving rise to each claim and the defense is similar, if not identical.

¶17 In disputing that the typicality requirement is met, Verisma surprisingly relies on quotations from *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), and *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535 (W.D. Wis. 1998). These quotations actually support Hammetter and Vinkavich's position and the circuit court's order in this case.

¶18 Verisma asserts that the typicality requirement is satisfied if it

"arises from the same event or practice or course of conduct that gives rise to the claims of other class members and … [the representative's] claims are based on the same legal theory." *Oshana*, 472 F.3d at 514. "The operative considerations are defendants' alleged conduct and plaintiffs' legal theories." *Insolia*, 186 F.R.D. at 543-44. The typicality requirement assures the named plaintiff's claims "have the same essential characteristics as the claims of the class at large." *Id.*

Here, the "practice or course of conduct that gives rise to the claims of other class members" is the same as that giving rise to Hammetter's and Vinkavich's claims—Verisma allegedly charged them all, either directly or indirectly, the $8 certification charge and/or $20 retrieval fee. Furthermore, Hammetter's and Vinkavich's claims are "based on the same legal theory" as all class members—that these charges were in violation of Wis. Stat. § 146.83(3f)(b)4.-5. As *Insolia* indicates, these are "[t]he operative considerations." *Insolia*, 186 F.R.D. at 544-45.

¶19 Verisma and Froedtert note that in *Moya I*, we interpreted Wis. Stat. § 146.83(3f)(b)4.-5. as *not* exempting from the $28 fee an attorney who requested records on behalf of a patient, but then a year and one-half later, in *Moya II*, the supreme court reversed our decision and held that "any person," including an

attorney, with a written authorization who requests records on behalf of a patient *is* exempt from these fees. As previously noted, because of this, Verisma and Froedtert claim Verisma may have had a different "state of mind" as it relates to fees it charged (1) pre-***Moya I***, (2) post-***Moya I*** but pre-***Moya II***, and (3) post-***Moya II***. Because Hammetter and Vinkavich were both charged the $28 fee pre-***Moya I***, Verisma and Froedtert assert that Hammetter's and Vinkavich's claims would only relate to Verisma's pre-***Moya I*** state of mind and thus would not be typical of claims of class members who were charged in either of the other two time periods. This matters, Verisma and Froedtert argue, because if Verisma was merely negligent in charging the $28 fee, exemplary damages would be capped at $1000, whereas if Verisma intentionally charged the fees, the exemplary damages could be up to $25,000.

¶20 The question on typicality, however, is not whether the claims of Hammetter and Vinkavich are identical in every way with every potential class member but whether their claims are typical. Again, as Verisma points, the typicality requirement is met if Hammetter's and Vinkavich's claims "arise[] from the same … practice or course of conduct that gives rise to the claims of other class members," "are based on the same legal theory," and ultimately "have the same essential characteristics as the claims of the class at large." These factors are satisfied here. Furthermore, as previously stated, Froedtert and Verisma point to no evidence indicating Verisma actually had a different mental state dependent on when the records were requested (or the nature of the person or entity who made the request). Moreover, we note that WIS. STAT. § 803.08(7) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class." Thus, if after discovery on the merits, the circuit court determines that subclasses are appropriate, it has the statutory authority to establish subclasses.

Fair and Adequate Protection of Class Interests

¶21    "In determining adequacy of representation, the primary criteria are: (1) whether the plaintiffs or counsel have interests antagonistic to those of absent class members; and (2) whether class counsel are qualified, experienced and generally able to conduct the proposed litigation." *Cruz*, 242 Wis. 2d 432, ¶18. Neither Verisma nor Froedtert develop an argument to convince us that Hammetter, Vinkavich, or their counsel have an interest that is antagonistic to those of other members of the class, nor do we see any. As to whether counsel representing Hammetter and Vinkavich in this class action are qualified to adequately "conduct the proposed litigation," the circuit court found that the interests of the class will be protected "by experienced and competent counsel who have achieved excellent results in the past, and are familiar with the law and facts governing this proceeding." Verisma and Froedtert make no argument to the contrary, thus we spend no more time on this consideration.

Predominance and Superiority

¶22     We also consider whether "the questions of law or fact common to class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* WIS. STAT. § 803.08(2)(c).    In addressing these considerations, the circuit court stated:

> [L]itigating as a class is preferable to individual court actions, in that consolidation in a single forum reduces management difficulties.  Filing separate claims and then seeking joinder is not practical because of the size of the proposed class; the class proceeding supports judicial economy and financial economy for all parties.
>
> There is a single fact circumstance underlying the class and that is Defendant's charging [of] the Retrieval and Certification fees contrary to statute, and it is common to the representatives and all class members.  The issue is narrow, and not subject to differences in application. Damages can be easily determined from invoices and records.
>
> A class action is a superior method to fairly and efficiently legally resolve the issue of the alleged wrongfully collected fees.  Thousands of small claims proceedings is not economical or efficient for any party or the court.  A class action … protects the rights of all involved [and] [e]nsures that more persons who are potential class members will receive compensation for incorrect fees charged.  The class action provides the best forum to manage the claims.

We agree in all respects.

¶23     Our decision in *Harwood* provides us significant guidance with regard to predominance and superiority.  Interpreting the same statutory provisions at issue here on essentially the same facts, we stated that "the claims of all the class members and the representative[s] are not only predominant[,] they are the only claims each member makes." *Harwood*, 388 Wis. 2d 546, ¶58.  "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus

of operative facts and issues." ***Beaton v. SpeedyPC Software***, 907 F.3d 1018, 1029 (7th Cir. 2018).  As we have already explained, that is certainly the case here.  The questions common to all members of the class predominate "over any questions affecting only individual members."  *See* WIS. STAT. § 803.08(2)(c).

¶24    Considering that the issue in this case is essentially the same as that in ***Harwood***, we agree with the superiority-related statement we made in that case: "[T]he case law is clear that public policy favors class actions especially where the amount in controversy is so small that the wronged party is unlikely ever to obtain judicial review of the alleged violation without a class action."  *See **Harwood***, 388 Wis. 2d 546, ¶58.  Additionally, as the circuit court also noted, if individuals did choose to obtain judicial consideration related to the charging of the $28 fee and thousands of such cases were filed, it would have a "staggering" impact on our court system.  *See **id.***  The circuit court correctly noted that class action is the superior method for adjudicating the potential claims related to the fee.

¶25    Verisma and Froedtert contend that because of the different legal decisions in ***Moya I*** and ***Moya II***, class action is not the "superior" method for adjudicating this matter.  Verisma claims "[a] jury will need to conduct an individualized inquiry into Verisma's intent at the time of each transaction to determine whether Verisma acted in good faith, negligently, or knowingly and willfully."  It adds that the timing "*could* have an impact on how Verisma was acting at the time."  (Emphasis added.)  Similarly, Froedtert also notes that plaintiffs must be able to prove Verisma violated WIS. STAT. § 146.83 "in a manner that is knowing and willful" (WIS. STAT. § 146.84(b)) or "negligently" (§ 146.84(bm)) to receive exemplary damages.  We do not have concerns.

¶26 First, although Verisma insists it has a "good faith" defense under WIS. STAT. § 146.84(1)(a), that provision does not apply here. Section 146.84(1)(a) states: "A custodian of records incurs no liability under par. (bm) [related to a "person ... who negligently violates (WIS. STAT. §§) 146.82 or 146.83" being liable for actual damages, exemplary damages up to $1000, and costs and attorney fees] for *the release* of records in accordance with [§§] 146.82 or 146.83 while acting in good faith." (Emphasis added.) Here the issue is whether Verisma wrongly *charged fees* for the release of records; the issue does not relate to harm caused as a result of the release of the records. Verisma's proposed interpretation would swallow up § 146.84(b) and (bm), and the language of § 146.84(1)(a) gives no indication Verisma's interpretation was intended by the legislature.

¶27 As to whether Verisma may have violated WIS. STAT. § 146.83 negligently as opposed to in a "knowing and willful" manner based upon whether it charged the fee before or after the *Moya I* or *Moya II* decisions, Hammetter and Vinkavich have the answer: "*if*, after merits discovery, there really are different periods of time that warrant different considerations, the circuit court retains the authority and discretion under WIS. STAT. § 803.08(3)(c) to alter or amend the scope of the certified [c]lass at any time before final judgment, as well as the authority and discretion under § 803.08(7) to divide the [c]lass into subclasses." We do not, however, see that an "individualized inquiry" of Verisma's intent in relation to each class member would be necessary. Rather, it appears likely that whether Verisma acted negligently versus "knowingly and willfully" will be the same as to all persons who were charged the fees during the particularly identified time period, and quite possibly with regard to the entire time period. Regardless, as we stated in *Harwood*, "[i]n the interest of simplifying the lawsuit and avoiding a multiplicity of litigation, a class action is proper even if each member of the class has a separate cause of

15

action for money damages." ***Harwood***, 388 Wis. 2d 546, ¶54 (citation omitted). This applies here as well.

¶28 The predominance and superiority requirements are met.

*Notice to Potential Class Members*

¶29 Verisma tries to derail class certification by asserting that we should "at the very least, remand for further proceedings and require Hammetter and Vinkavich to present the plan addressing notice" to be provided to potential class members. It claims that the circuit court's class definition "is not precise enough to allow for individual notice of the class action."

¶30 Verisma seeks to put the cart before the horse as WIS. STAT. § 803.08(4)(b) provides that the question of proper notice need not be addressed until the question of class certification is resolved.[6] Furthermore, that statutory

---

[6] WISCONSIN STAT. § 803.08(4)(b) provides:

(b) *For sub. (2)(c) classes.* For any class *certified* under sub. (2)(c), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language, all of the following:

1. The nature of the action.

2. The *definition of the class certified*.

3. The class claims, issues, or defenses.

4. That a class member may enter an appearance through an attorney if the member so desires.

provision shows that perfection of the notice provided is not the standard as it states that "the court must direct to class members *the best notice that is practicable under the circumstances*, including individual notice to all members who can be identified *through reasonable effort*." **Id.** (emphasis added); *see also* **Mullins**, 795 F.3d at 665.

> The rule does not insist on actual notice to all class members in all cases. It recognizes it might be *impossible* to identify some class members for purposes of actual notice….
>
> When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. When that is not possible, courts may use alternative means such as notice through third parties[] [or] paid advertising … without offending due process…. Due process simply does not require the ability to identify all members of the class at the certification stage.

*Mullins*, 795 F.3d at 665 (citations omitted). The matter of proper notice is premature. The circuit court will have opportunity upon remand to ensure the requirements of § 803.08(4) are satisfied.

*Class Certification of Common Law Claims*

¶31 Froedtert argues that "[t]he circuit court erroneously exercised its discretion in certifying the class for plaintiffs' common law claims" of conversion and unjust enrichment. We disagree.

---

5. That the court will exclude from the class any member who requests exclusion.

6. The time and manner for requesting exclusion.

7. The binding effect of a class judgment on members under sub. (5).

(Emphasis added.)

17

¶32    Froedtert asserts that "[p]laintiffs' conversion claim requires proof that each class member did not consent to pay the Fees." As Hammetter and Vinkavich point out, however, conversion can be committed not only by taking property without the consent of the owner but also by taking property without lawful authority, *see **Dorr v. Sacred Heart Hospital***, 228 Wis. 2d 425, 455-56, 597 N.W.2d 462 (Ct. App. 1999), which is the relevant allegation that Hammetter and Vinkavich make in this case.

¶33    Froedtert also asserts that Hammetter's and Vinkavich's unjust enrichment claims "require[] an inquiry into the equities involved with each class member" and that "[s]uch individual inquiries predominate here" and preclude class certification. It claims

> the equities involved in Verisma charging the Fees when doing so was consistent with the court of appeals' published *Moya I* decision are entirely different than the equities of charging the fees after the Supreme Court decided *Moya II*. Similarly, the trier of fact could find that the equities of charging a patient the Fees is different than charging an insurance company or a law firm.

It further adds that "[w]ith the proposed class, the trier of fact would have to make one liability determination for the class as a whole, and could not consider any of these differences in assessing Verisma's liability for unjust enrichment."

¶34    Froedtert also puts the cart before the horse. At this stage of the litigation, the only question before us is whether the circuit court erroneously exercised its discretion in certifying the class as it did. Questions ultimately related to potential subclasses or what verdicts should be utilized at the end of a trial are premature and more appropriately addressed by the circuit court following discovery on the merits. For purposes of class certification, however, Froedtert's arguments do not persuade us that the court erroneously exercised its discretion,

18

particularly since Froedtert directs us to no record evidence suggesting Verisma actually gave any consideration to the nature of the particular requestor or the time period when the request was made.

*Statute of Limitations*

¶35    Froedtert argues that the two-year limitation period of WIS. STAT. § 893.93(2)(a) operates to bar Hammetter's "and many of the other class member's" WIS. STAT. § 146.84 claims.  We disagree.

¶36    WISCONSIN STAT. § 893.93(2)(a) provides a two-year limitation period for "[a]n action by a private party upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor and the state, except when the statute imposing it provides a different limitation."  Froedtert claims this limitation applies "because WIS. STAT. § 146.84:  (1) allows private parties to seek penalties of up to $25,000 for violations of WIS. STAT. § 146.83; (2) gives the state a right to seek fines or imprisonment for *certain violations* of § 146.83; and (3) does not prescribe a limitations period."  *See* § 146.84 (emphasis added).  These concerns are easily addressed.

¶37    To begin, we agree that WIS. STAT. § 146.84's allowance for exemplary damages of up to $25,000 (for a "knowing and willful" violation) suggests a punitive intent; however, this alone does not demonstrate an intent by the legislature that the two-year statute of limitations applies.  *See South Milwaukee Sav. Bank v. Barczak*, 229 Wis. 2d 521, 534, 600 N.W.2d 205 (Ct. App. 1999); *South Milwaukee Sav. Bank v. Barrett*, 2000 WI 48, ¶24, 234 Wis. 2d 733, 611 N.W.2d 448.  As to the right of the state "to seek [criminal] fines or imprisonment for *certain violations* of WIS. STAT. § 146.83" (emphasis added), we note that the "certain violations" in which such criminal penalties could apply are not violations

related to a health care provider wrongly charging the $28 fee.[7]  Additionally, our supreme court has strongly stated:

> [U]nless the legislature *clearly requires the application of a specific statute of limitations*, case law *requires application of the six-year statute of limitations*.  Reviewing courts must interpret statutes of limitations so that "no person's cause of action will be barred unless clearly mandated by the legislature."  Absent a clear legislative mandate, case law instructs that the two-year statute of limitations must be narrowly construed in favor of plaintiffs to avoid extinguishing otherwise meritorious claims.

*Barczak*, 229 Wis. 2d at 535 (emphasis added; citations omitted) (language adopted by our supreme court in *Barrett*, 234 Wis. 2d 733, ¶24).  In this case, § 146.84 "[d]oes not prescribe a limitations period," cutting against the conclusion that the legislature intended a two-year period.  To reiterate, where the legislature did not "clearly require[]" the application of "a specific statute of limitations," "application of the six-year statute of limitations" is "require[d]."  *See Barczak*, 229 Wis. 2d at 535.  That is the case here.

¶38     Furthermore, a two-year statute of limitations is more likely to have been intended by the legislature where the statutory provision is for the benefit of the general public, as in the case of open records laws, *see State ex rel. Leung v. City of Lake Geneva*, 2003 WI App 129, ¶6, 265 Wis. 2d 674, 666 N.W.2d 104, and antitrust laws, *see Open Pantry Food Marts v. Falcone*, 92 Wis. 2d 807, 286 N.W.2d 149 (Ct. App. 1979).  While WIS. STAT. § 146.83(3f)(b)'s restrictions as to the amount that can be charged for retrieval of health care records no doubt benefits

---

[7] The "certain violations" related to WIS. STAT. § 146.83(3f) that carry criminal penalties are those in which a person "[r]equests or obtains confidential information" under subsec. (3f) "under false pretenses."  WIS. STAT. § 146.84(2)(a)1.  Thus, such penalties do not relate to a healthcare provider wrongfully charging certification charges or retrieval fees under § 146.83(3f)(b), but appear to only relate to a person using "false pretenses" to request or obtain "a patient's health care records" from a health care provider under § 146.83(3f)(a).

the "general public" to some extent, "the benefit derived by the general public … is substantially outweighed by the benefits derived by individuals." *See Barczak*, 229 Wis. 2d at 535; *Barrett*, 234 Wis. 2d 733, ¶24. The primary purpose of the statute is obviously to benefit individual patients by ensuring they are not gouged by unreasonable and excessive charges demanded by their health care provider for their own medical records. As we have observed, "The Wisconsin Supreme Court has held that the two-year statute of limitations applies where the action by a private party upon a statute penalty is for the benefit of the public, while the six-year statute of limitations applies when private individuals seek private relief." *See Leung*, 265 Wis. 2d 674, ¶6. With the statutory provision at issue in this case, private individuals seek private relief. The six-year statute of limitations applies. *See also Smith v. RecordQuest, LLC*, 989 F.3d 513, 521-22 (7th Cir. 2021).

*Voluntary Payment Doctrine*

¶39 Lastly, Verisma and Froedtert argue that class certification is inappropriate because "proof of [the voluntary payment] defense will require mini-trials of each class members' claims to determine if he or the requestor objected to the charges before paying them." This is a nonstarter as the voluntary payment doctrine plays no role in the class-certification consideration in this case.

¶40 The voluntary payment doctrine

> places upon a party who wishes to challenge the validity or legality of a bill for payment the obligation to make the challenge either before voluntarily making payment, or at the time of voluntarily making payment. [T]he voluntariness in the doctrine goes to the willingness of a person to pay a bill without protest as to its correctness or legality.

*Moya II*, 375 Wis. 2d 38, ¶33 (citation omitted). However, when the issue of this doctrine/defense was raised in *Moya II*, the court stated

21

> [T]he legislature's expressed intent [is] that a person with a written authorization from a patient does not have to pay the certification charge or retrieval fee for obtaining health care records. Thus, "[a]pplication of the common law voluntary payment doctrine would undermine the manifest purposes of [WIS. STAT. § 146.83(3f)]."

*Moya II*, 375 Wis. 2d 38, ¶34 (second and third alteration in original; citation omitted). Because of this, the court stated that it could not apply the voluntary payment doctrine to bar Moya's claim. *Id.*

¶41 While Verisma indicates that it raises this defense in relation to Hammetter's and Vinkavich's "common law claims" of unjust enrichment and conversion, those claims directly stem from and would not exist without WIS. STAT. § 146.83(3f). Thus, we believe this holding of *Moya II* to be broad enough to preclude application of the voluntary payment doctrine to these claims as well, because application of the doctrine to these claims would just as readily "undermine the manifest purposes" of § 146.83(3f).[8] *See Moya II*, 375 Wis. 2d 38, ¶34.

¶42 For the foregoing reasons, we conclude that the circuit court did not erroneously exercise its discretion in certifying the class in this case.

*By the Court.*—Order affirmed.

---

[8] On appeal, Froedtert makes reference to the common law defense of waiver. Because Froedtert fails to sufficiently develop this issue, however, we do not consider it. *See M.C.I., Inc.*, 146 Wis. 2d at 244-45.